STATE OF IOWA v. ELMER ENGSTROM, Appellant.

**Bastardy:** EVIDENCE. Where the defendant in bastardy proceedings was not present at a conversation between the prosecutrix and a physician, evidence as to what the physician advised her to do was inadmissible, although she had testified that she had consulted him at defendant's suggestion.

**Same:** INSTRUCTIONS. Where it appeared in bastardy proceedings that prosecutrix had kept company with another, both prior and subsequent to the time in question, and was engaged to marry him, and the court instructed that the extent to which this evidence tended to show that defendant ·was not the father of the child was for the jury to determine, when considered in connection with all the other evidence in the case; and the further instruction that such evidence was of no moment if defendant

was the father of the child, even though she may have had intercourse with such other party, did not have the effect to withdraw from the jury consideration of her relations with such other person as bearing on the issue as to who was the father of the child.

**Same.** An instruction in so far as cautioning the jury to base its verdict on the evidence alone is not objectionable, but it is held erroneous in that the jury, notwithstanding the caution, might have understood that they were at liberty to ignore the rules laid down for their guidance and to exercise a flexibility of judgment specially accorded laymen in reaching their verdict.
Weaver, J., dissenting.

*Appeal from Wright District Court.*—Hon. R. M. Wright, Judge.

Monday, December 20, 1909.

THE information charged defendant with being the father of prosecutrix's bastard child. There was a verdict of guilty, and judgment accordingly. The defendant appeals.—*Reversed.*

*Nagle & Nagle,* for appellant.

*Birdsall & Birdsall,* for appellee.

LADD, J.—The prosecutrix was delivered of an illegitimate child August 8, 1908. She testified that it was conceived of defendant October 27, 1907. He denied this, and the testimony of several witnesses was to the effect that intercourse could not have happened in the circumstance related. On the other hand, his interest in her subsequent to ascertaining her condition tended to corroborate her story. The evidence was such as to preclude any interference with the verdict by this court.

I. Prosecutrix, having testified that at defendant's instance she consulted a physician, was asked what the

doctor advised her, and, over objection, answered: "To go to the Benedict Home." Defendant was not present, and there is no theory on which the ruling may be sustained; but the answer could not have worked any prejudice.

1. BASTARDY: evidence.

II. The evidence tended to show that one Pyle kept company with the prosecutrix prior and subsequent to the time in question, had been engaged to marry her, and was frequently out with her until ten or eleven o'clock in the evening, while she had not been with the defendant in the year 1907 prior to October 27th. With reference to such evidence, the court instructed: "The fact that the prosecuting witness kept company with William Pyle and was at one time engaged to be married to him, you are instructed, is in this case of no consequence if the defendant is the father of the said child, nor would even the fact, if it were a fact, that said prosecuting witness had had sexual intercourse with said Pyle be material or of any consequence in this case, unless said child was the result of such intercourse." It is said that this was erroneous in that it excluded from the jury's consideration prosecutrix's relations with Pyle as bearing on the issue as to who was the father of the child. With reference thereto, the court had said in the previous instruction: "To what extent, if any, this testimony has a tendency to show that the defendant is not the father of the child, is for you to determine when you consider it in relation to all the other evidence in the case." The purpose of the evidence was to show that the child might have been begotten by Pyle, and, upon a finding that this was not so, the intimacy of their relations was immaterial, for this then would furnish no aid in identifying the father. The exception was not well taken.

2. SAME: instructions.

III. Complaint is also made of the ninth instruction:

You are instructed, gentlemen, that evidence alone

will sustain a verdict. You are not permitted under any circumstances in reaching your verdict to indulge in mere conjecture, surmise, or speculation as to the facts; but, insofar as they have not been admitted, they must be established by the evidence as I have heretofore in these instructions indicated. It would be a reproach to justice unless you were governed absolutely and solely by the evidence in this case. It is one of the boasted privileges of our modern civilization that we have established enlightened systems of jurisprudence, and one of the jewels of our system of jurisprudence is regarded as that of the trial by jury, because it is believed that in certain classes of cases at least, men out of the general walks of life, not educated and versed in the subtleties and intricacies of the law, are more capable of reaching just conclusions upon matters of fact than is the mind of the trained jurist or lawyer, because they are not bound down and circumscribed by those rules which become imbedded in the mind of the educated lawyer, and which at times prevent·him from giving that flexibility to his judgment which the mind of the layman is enabled to do; and for the further reason that the latter is entirely ignorant of those rules. and therefore is not in anywise influenced by them. Therefore it is that the experience of the ages has demonstrated the value of the jury as an arm of the court in the determination of certain classes of questions, and, of course, that feature of our system can only remain with credit while juries continue to base their verdicts solely upon those things which they have a right under the law to consider.

In so far as this cautions the jury to base their verdict on the evidence alone, it is not objectionable. Nor can exception be taken to the glowing encomium on the jury system, though often criticised by publicists, save that it was not pertinent to any issue in the cause, and possibly might as well have been said on occasion other than in submitting an important case. But the court was not happy in stating its reasons for thinking trial by jury "one of the jewels of our system of jurisprudence." Undoubtedly in comparing the

3. SAME.

qualifications of a trained jurist to pass on issues of fact with those of the layman, the court had reference to the relative conditions of mind resulting from learning in the law, and from being ignorant thereof, and uninfluential therein, but the instruction is subject to a different interpretation and one quite, if not the more, likely to have been adopted by the jury. In the first place, they might have concluded that the case at bar was one of the "classes of cases" in which the juror enjoys special advantages over the judge; and, in the second place, that in passing on the issues they were relieved from observing those rules of law which would have guided the judge in reaching a decision. Possibly there are many cases in which the jury is better qualified to pass on such issues than the *nisi prius* judge, but we had supposed this was because of their greater familiarity with the subject-matter under investigation and the advantage of numbers rather than ignorance of the subtleties and intricacies of the law. But, if the latter be the better explanation, it does not follow that "they are not bound down and circumscribed by those rules which become imbedded in the mind of the educated lawyer," if these rules relate to the ascertainment of the truth from the evidence adduced, and the jurors had the right to infer that it was of rules influencing findings of fact concerning which they were being instructed.

Ordinarily, instructions, after defining the issues, suggest the principles of the law of evidence and lay down the rules of law, applicable to the facts, by which the jury is to be guided. These rules have been evolved and developed from the long experience of the past, and are to be observed quite as punctiliously by the juror, uneducated in the law though he be, in following the judge's exposition thereof, as found in the instructions intended to supply the want of knowledge, as by a learned jurist when a jury has been waived. It may be that the observance of these rules prevents the educated lawyer "from giving that

flexibility to his judgment which the mind of a layman is enabled to do," but ordinarily when the layman succeeds in breaking away from their observance—that is, has not been "in any wise influenced by them"—the result is a miscarriage of justice, often discreditable to the jury system. Nor can it be conceded that the perpetuity of this system depends on juries continuing "to base their verdicts solely upon those things which they have a right under the law to consider" if these are outside of the matters which guide and control a judge in like investigations. As said, the court doubtless did not intend the deductions indicated, but such are the inferences reasonably to be drawn from the language employed. Indeed, the jury might well have understood that, though the verdict must be based on evidence, the jurors were at liberty to ignore those rules which the court had laid down for their guidance and exercise that flexibility of judgment accorded to laymen in reaching a verdict; in other words, that though appropriate for a learned jurist, as for example, the judge, the jurors were not to be influenced thereby. The cause was of a class in which sentiment is likely to and too often does play an important part, and, instead of intimating that the rules which govern all triers of fact might be relegated, the court might well have cautioned against being swayed by considerations other than the evidence and the law as laid down by the court for the jury's guidance. Justice, whether based on the finding of court or jury, must be administered according to law. Necessarily an instruction which may be construed otherwise must be regarded as erroneous and prejudicial.—*Reversed* and *remanded.*

WEAVER, J. (dissenting).—That the right of an accused person to a fair and impartial trial is a sacred one I freely concede, and, when on his appeal to this court the record discloses any error or abuse of discretion whereby that right has been invaded or abridged, a reversal should

unhesitatingly follow. But in thus assuring justice to the accused we should be equally careful to avoid unsettling the safeguards with which the law has attempted to surround public interests. Judgments of trial courts, entered after a full hearing of the testimony of witnesses examined in the presence of the jury and under the most favorable circumstances for testing their credibility and ascertaining the truth of the matter in issue, should not be disturbed for trivial reasons. As I view it, the majority opinion does not correctly interpret the meaning or effect of the instruction which it criticises. It is very clear to my mind that the court sought by this charge simply to emphasize and impress upon the minds and consciences of the jurors the necessity of avoiding all extraneous influences, and rendering their verdict upon the evidence and the evidence alone. It does not attempt to emancipate the jurors from their obligation to observe the rules of law given them by the court, but suggests what I believe to be true, that, while a jury must observe the legal limitation imposed by the charge of the court, the value of the jury system consists largely in the circumstance that it brings, to the consideration of disputed fact questions, minds in which the saving grace of common sense has not been obliterated or obscured by excessive devotion to artificial rules, which too often results in the sacrifice of substance to technical niceties of form or expression. Keeping within the limit prescribed by the instructions, jurors are at perfect liberty to bring the evidence submitted to them to the test of their own judgments, experiences, and observations of men and events untrammelled by technical rules and precedents. A verdict is never so sure to be a miscarriage of justice as when the jury returning it is composed of members who try to conform their findings to their crude and inadequate conception of the way in which the judge or lawyer would handle the question rather than to the standard of their own untrammelled reasoning powers.

Even if it be thought unnecessary for the court to treat of these things in charging the jury, the fact that it does so ought not to be held prejudicial error.   Each individual judge must, to a greater or less extent, leave the impress of his individuality upon the record of every trial over which he presides, and it is neither possible nor desirable to avoid it; and, while each must conform his rulings and instructions to sound legal principle, he should not be controlled in his selection of the language by which that principle is expressed.   David could not fight in the armor of Saul, and doubtless Saul would have made a poor showing as an expert with David's sling.   The law does not consist in set phrases which we find embalmed in the solemn verbiage of text-writers and court reports.   The idea, the principle, is the essential thing, and, if it be stated in such form as to be comprehended by the jurors, an instruction is not open to criticism because it is couched in language which we might not have employed for the same purpose. Tried by this standard, there is, in my opinion, no prejudicial error in the charge given by the trial court.   The prosecution concededly made a case upon which it was entitled to go to the jury, and I can not avoid the conviction that we are setting aside the verdict and undoing the work of the trial court on very unsubstantial grounds.   I think the judgment should be *affirmed*.