# CHARLESTON.

STATE *ex rel* JENNIE PIERCE *v.* BUFORD WILLIAMS.

Submitted December 4, 1923.   Decided December 11, 1923.

1.   BASTARDS—*Order of Arrest Held Sufficient.*

> An order of arrest on a charge of bastardy issued by a justice of the peace directed to the sheriff or a constable commanding the arrest of the putative father and delivery of his person to some justice of the county to be dealt with according to law, and which states that an unmarried woman, naming her, of the county, on the date of the warrant, appeared before the justice, was examined under oath, and accused the defendant of being the father of a female bastard child of which she was delivered on a certain date (less than

three years prior to the date of examination) is sufficient; and a motion to quash is properly everruled. (p. 220).

2.  SAME—*Temporary Absence of Prosecutrix Held Not to Preclude Proceedings Against Putative Father.*

Where the prosecutrix in a bastardy proceeding is a minor and has resided and worked in the county for more than two years prior to the time she has become *enciente* by the accused, and after becoming pregnant and ill and incapacitated to work, she goes to her mother's home in another state where her child is delivered, afterwards returning to the county to continue her work, such absence at her mother's home will not prevent bastardy proceedings against the putative father, on the ground that she has not resided in .the county for one year next preceding the complaint (p. 221).

3.  SAME—*Parties Precluded, by Failure to Object Below, From Urging Error That Instructions Not Written.*

Where at the conclusion of the evidence neither party has tendered instructions, but unite in asking the court to orally charge the jury, which the court then does, without objection or exception from either party, neither party can complain in the appellate court that the charge was not in writing, and therefore erroneous. (p. 223).

4.  EVIDENCE—*Preponderance of Witnesses Is Not Preponderance of Evidence.*

A preponderance of the number of witnesses for the establishment of a fact, does not make a preponderance of the evidence.    The jury are the sole judges of the credibility of witnesses and the weight to be given to the oral evidence. (p. 224).

5.  BASTARDS—*Guardian Ad Litem or Next Friend Unnecessary for Minor Prosecutrix.*

It is not necessary that a *guardian ad litem*, or next friend, be appointed in a bastardy proceeding for the prosecutrix who is a minor.  (p. 225).

Error to Circuit Court, Cabell County.

Proceedings in bastardy by the State, on the relation of Jennie Pierce, against Buford Williams.

Judgment of conviction, and defendant brings error.

*Affirmed.*

*Warth & Peyton,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for defendant in error.

LIVELY, JUDGE:

The judgment complained of was entered the 18th of September, 1922, in a bastardy proceeding, and requires defendant Buford Williams to pay to the county court $75.00 a year up to an including the year 1929, and to give bond in the penalty of $1,000 for the payment of said sums.

Jennie Pierce, an unmarried woman, accused Buford Williams of being the father of a female bastard child born the 8th day of October, 1921. A warrant was issued for his arrest under the statute, the case was tried by a jury in the circuit court, and on a verdict of guilty as charged in the complaint the judgment was rendered.

A motion to quash the warrant was made and overruled, and this is the first assignment of error. The warrant on its face is regular, reciting that Jennie Pierce, an unmarried woman, of the county, had that day, upon examination under oath before the justice of that county, issuing the warrant, accused one Buford Williams of said county of being the father of a female bastard child, of which she was delivered in said county on the 8th day of October, 1921, and commands that defendant be brought before the justice to be dealt with according to law. It is doubtless the examination of Jennie Pierce, the complainant, which was the subject of the motion to quash. The statute requires that the justice shall examine the complainant under oath, and reduce her examination to writing, and sign it. This was done, and it shows that she was unmarried, appeared before the justice on the 30th day of January, 1922, and being sworn "deposes and says that she is an unmarried woman, who has resided in the said county for one year next preceding this date on the 8th day of October, 1921, she was delivered of a female bastard child, and that Buford Williams of said county is the father of said child." The point is made that the examination does not show that she had resided in the county of Cabell for the year preceding the date of her complaint; that is, that she had resided in said county for one year next preceding the 8th

day of October, 1921, and not for one year preceding the 30th of January, 1922, the date of the warrant. We do not so interpret her examination. The date of the birth of the child was October 8, 1921. The examination under oath says she has resided in the county for one year next preceding this date, evidently referring to the 30th of January, 1922, the date at which she appeared before the justice. Evidently the justice was following the form prescribed by Dr. Hogg. on page 499 of Hogg's Treatise and Forms, and neglected to place after the words "this date" a semi-colon as given in that form. There is no punctuation between the words "this date" and "on the 8th day of October, 1921", but it is clear from the context that "this date" refers to the date on which the information was given. The warrant is good on its face, containing all the necessary averments. The motion to quash was properly overruled.

Defendant filed a plea in bar setting up the fact that Jennie Pierce was a resident of the state of Ohio and not of the state of West Virginia, and that therefore she could not maintain the action. The evidence of the prosecutrix is that she had resided in Huntington, Cabell county, about two and a half years next preceding and had lived with her sister in that city; that she was employed as elevator girl in one of the bank buildings of that city; that on the 7th of January, 1921, she became *enciente* by Williams while on an automobile excursion into the nearby country; and becoming unwell two or three months afterwards as a result of her pregnancy, and not able to continue her employment, she went to her mother who lived in Millersport, Ohio, a short distance from the Ohio River and near the city of Huntington, where she remained until she was delivered of the child in October, 1921; that after her recovery from her childbed sickness she returned to Huntington in December, 1921, and on January 30, 1922, instituted the action; that it was never her intention to leave Huntington, which she considered her home and residence, and that her trip to Ohio was for the purpose of having her mother take care of her in her sickness attendant upon the birth of the child; that at the time of the trial she was residing in the city of Huntington. Upon the coming in of this evidence a motion was made to strike it out and dis-

miss the case because she had not resided in the county of Cabell one year next preceding the time of her complaint and that she was then a resident of Ohio. The court refused this motion, and this is the second assignment of error. The statute does not require that the prosecutrix shall be a resident of the county for one year next preceding her complaint in the legal sense of residence. It only requires that she shall have resided therein for that period. For about two and a half years she had been residing in the city of Huntington with her sister and making her livelihood. This was with the consent of her mother, who appears to be a widow. It is immaterial whether she had gained a legal residence there. While she did not actually stay in Cabell county for one year next preceding her complaint, it is apparent that her absence was only temporary for the purpose of giving birth to the child and at the most natural place which she would likely go, to her mother's house, where tender care and sympathy could be bestowed. Had she gone to Cincinnati or other convenient place outside Cabell county to a lying-in hospital or for the purpose of being attended in her childbirth by competent physicians and nurses, it would not preclude her from maintaining this action. If it should be held that her temporary absence would preclude her, any break in her actual residence for any length of time in the year preceding her complaint would be sufficient to defeat her action. A like contention was made in *Bowen* v. *Parsons,* 78 W. Va. 591, where lack of residence of the prosecutrix in the county for one year next preceding the date of the accusation was set up by special plea. The proof showed that for a month preceding the birth of the child and for another succeeding that date she was at the home of her father outside the county but that with the exception of this break in the continuity of her residence she had resided for several years in the county in which the complaint was filed. Judge POFFENBARGER disposed of this point of error by saying: ''It would be useless to take the time and space here to demonstrate that this temporary absence from the county did not destroy the residence in the county which she had gained in which the proceeding was instituted.'' A like contention was made in *Hodge* v. *Sawyer,* 85 Me. 285. The child was begotten in Cumberland county.

Maine, where the defendant was a resident and the complainant commorant. Before the child was born the complainant, a minor, returned to her father's house in New Hampshire, and was there delivered. Afterwards she came back to Cumberland county for the purpose of making the complaint, but had no residence in the state since the child was born. The complaint alleged her residence to be in Cumberland county, Maine. The court said the court had jurisdiction of the subject matter, the defendant residing in that county, and jurisdiction of his person and that it would be unreasonable to hold that he was not amenable to the laws because from distress the complainant sought shelter in her father's house in another state, the only place for her to go outside of the almshouse. Of similar import is the case of *Davis* v. *Carpenter*, 172 Mass. 167. We think the evidence shows that the prosecutrix resided for the statutory time in the county of Cabell within the meaning and intent of the statute, and that she can maintain this proceeding there, where the defendant lives and where the child was begotten. It would be a strained construction of the statute to hold otherwise, and would tend to defeat the intention of legislation which is to prevent such children from becoming public charges. There was no error in the refusal of the court to dismiss the complaint upon the coming in of this evidence.

The third point of error is that the court at the conclusion of the evidence instructed the jury orally to the effect that an unmarried woman may go before a justice of the county in which she has resided for the preceding year, and accuse any person of being the father of a bastard child, of which she had been delivered; that the burden of proof rests upon her to show by a preponderance of the evidence that the defendant is the father of the child in controversy, and if they so find the verdict should be guilty as charged in the warrant; and if they should find that the preponderance of the evidence is in his favor then they should return a verdict of not guilty. It is asserted that the error is that the instruction was oral and is in contravention of the statute as set out in *Henderson* v. *Kessel*, 116 S. E. 68. That statute is mandatory, and was for the purpose of giving the parties time to inspect the instructions proposed to be given by the court,

and for entering their objections thereto. However, it appears that neither side offered instructions and at the conclusion of the evidence both sides requested the court to charge the jury, which he did, as above set out, and to which charge neither party objected nor excepted. We think Williams and the prosecution would be both chargeable with this error, if error there be. They waived their right to have the instruction put in writing, by their request for an oral charge. A party cannot rely upon error which he induced at the trial.

The fourth assignment of error is that the verdict should be set aside because the evidence clearly preponderates in favor of the defendant, and therefore the finding of the jury was induced by bias, prejudice or passion. The prosecutrix testified that the conception took place on the 7th of January, 1921, when the automobile ride was taken. She was accompanied by defendant and another girl who was accompanied by another young man on that occasion. The other girl could not be found, and was not a witness. Defendant showed by his own evidence and that of his father, and inferentially by another witness that in the month of January of that year he was in Cincinnati and not in Cabell county. He admitted, however, that in the February following he returned and did have sexual intercourse with the prosecutrix. Two other young men also testified that in the month of February about the same time they had sexual intercourse with her. The state raises the point that defendant, having admitted sexual intercourse, could not show by other witnesses that they also had sexual intercourse with her about the same time, and cites *Fall* v. *Overseers,* 3 Muns. 495; *State* v. *Parish,* 83 N. C. 612; *State* v. *Bennett,* 75 N. C. 305; and *State* v. *Britt,* 78 N. C. 439. Without deciding whether it was error under the circumstances to admit the testimony of the other two young men who claimed to have had sexual intercourse with her, we note that no objection was made to the introduction of the evidence by the state, and it cannot be set up here. Besides, the verdict was in favor of the prosecution. The evidence went in without objection and was considered by the jury, and we can see no right in the state to complain at this late date. Can we say the evidence clearly preponder-

ates in favor of defendant? While Buford Williams is positive that he was not in Huntington during the month of January, the other witnesses corroborating him on this point are not clear as to the time he returned. He says he came back about the first of February following, when he admits having carnal connection with the girl about the first of that month. This was within the period of gestation. Mere preponderance in the number of witnesses is not sufficient. The jury has the right to believe one as against many; and they had the witnesses before them, observed their demeanor on the stand, and the child itself was before them at the trial. It is elementary that the jury are the sole judges of the credibility of witnesses, and the weight to be given to their testimony. We cannot say, under these circumstances, that the verdict was brought about by bias, passion or prejudice.

The fifth and last assignment of error is (a) that plaintiff was a minor and the suit should have been prosecuted by her next friend; and (b) defendant was a minor and no *guardian ad litem* was appointed for him to defend his interest in the case.

.(a) We can see no reason or necessity for the appointment of a next friend for the infant mother. The proceeding is not for her benefit but for the commendable purpose of providing funds for the maintenance of the child in order that it might not become a public charge. The public is interested in the prosecution of the suit, and the warrant runs in the name of the State. She is a witness. It is true that she has an interest in the litigation to see that her offspring is provided for in its infancy, but she is a nominal plaintiff. She only can inspire the proceeding by her complaint. The prosecuting attorney is required to appear in the prosecution of the case. Moreover, the statute, sec. 3, chap. 80, Code, says that after the accusation shall have been made the proceedings thereon may be had in the name of the woman, or if the court so orders, in the name of the county court. The judgment here is in favor of the county court, the money being directed to be paid to the county court for the maintenance of the child. "It is no defense to a complaint in bastardy that the plaintiff is a minor and has brought the proceedings in her own name, and not by her next friend."

*Conefy* v. *Holland,* 175 Mass. 469, 56 N. E. 701. It is held in *Hanna* v. *State,* 60 Ala. 100, that, inasmuch as the mother of the child is only a witness, and not the plaintiff, an action of bastardy will not abate on account of her failure to appear by next friend. This case was cited and followed in *Miller* v. *State,* 110 Ala. 69, 20 So. 392. So, in *Dehler* v. *State,* 22 Ind. App. 383, 53 N. E. 850, it is held that, notwithstanding a statute requiring the appointment of a next friend in an action in which an infant is the sole plaintiff, the appointment of a next friend for the complainant in bastary proceedings is unnecessary, inasmuch as the state is the plaintiff, and the complainant is merely the prosecuting witness.

(b) After the verdict of the jury it appears from the bill of exceptions that defendant moved the court to set aside the verdict because he was an infant nineteen years and three months of age, and that no *guardian ad litem* had been appointed for him to defend his interests in the suit. While it is well established that a judgment in a civil suit against an infant is erroneous, where there has been no *guardian ad litem* or other guardian appointed, who has appeared, yet this statute has some of the features of a criminal proceeding in that the warrant runs in the name of the state and the putative father may be arrested and his liberty taken from him unless he procures a bondsman. The magistrate may hold him in custody unless he gives bond for his appearance to answer the charge at the succeeding term of the circuit court. It is well established that he cannot avoid the obligation of the bond which he executed with surety for his appearance because of his infancy. Nor can he avoid the consequence of his act because of infancy; he may be required to give a bond for the faithful payment of the money which the judgment requires to be paid by him for the support of his child. His infancy does not protect him from the obligation of the bond. No intimation of his infancy appeared in the trial until it was about finished when he went upon the stand and testified that he was then over nineteen years of age. He had been to that point, and afterwards was, ably defended by learned counsel, and his father, the natural guardian, was present in court looking after his interests. The point that he had no guardian

was not raised until after the verdict had been returned, and we think under the circumstances in this case it was not error for the court to refuse to set aside the verdict on that ground, it appearing that defendant had not been prejudiced and that he had been accorded a full and complete defense. The reason of the rule requiring appearance and defense by *guardian ad litem* is not cogent under the circumstances detailed. We do not mean to say that where it appears that a defendant in such proceeding is an infant that a *guardian ad litem* should not be appointed.

The judgment is affirmed.

*Affirmed.*