# CHARLESTON.

LUCILE POPE *v.* J. H. KINCAID

(No. 5287)

Submitted September 15, 1925.   Decided September 22, 1925.

1. BASTARDS—*Minor Complainant in Bastardy Proceedings Need Not Sue by Next Friend.*

    It is not necessary, under our statute, for a minor, who is a complainant in a bastardy proceeding, to sue by her next friend. (p. 682).
    (Bastards, 7 C. J. § 82).

2. SAME—*Character of Complainant in Bastardy Proceedings for Chastity is Not Involved.*

    On a prosecution for bastardy against the putative father of the bastard child, under the provisions of Chapter 80 of the Code, the character of the complainant for chastity is not involved in the issue. (p. 683).
    (Bastards, 7 C. J. § 115).

3. SAME—*Defendant May Not Show Carnal Connection of Prosecutrix With Other Men Except as Bearing on Paternity.*

    Upon the trial in such a proceeding the defendant will not be permitted to introduce evidence to prove that the complainant has at any time had carnal connection with other men, unless such connection has occurred within such a period before the commencement of her gestation that it is possible that one of such other persons may have been the father of the child. (p. 684).
    (Bastards, 7 C. J. § 118).

4. SAME—*Proof of Carnal Knowledge of Prosecutrix by Other Men, Within Period Making it Possible for One of Them*

*to be Father of Child, is Only Circumstance to be Consid-
ered With Other Facts and Circumstances.*

Proof of connection of complainant with a man other than
the defendant, during the period last aforesaid, does not
necessitate a finding for the defendant, but is merely a cir-
cumstance to be considered, together with all the other facts
and circumstances of the case, in determining the parentage
to the child.   (p. 684).

(Bastards, 7 C. J. § 126).

5.   SAME—*In Bastardy Proceedings, Child May be Exhibited to
Jury, and its Appearance is Legitimate Subject for
Comment.*

In such proceedings, the child whose paternity is sought
to · be established, may properly be exhibited to the jury;
and its appearance and features are legitimate subjects for
comment by counsel, in connection with the testimony of
witnesses in the case.   (p. 682).

(Bastards, 7 C. J. §§ 125, 136).

6.   SAME—*Mother of Illegitimate Child May Compromise and
Settle With Reputed Father Her Claim for Damages
Against Him; to Preclude Mother of Illegitimate Child
From Prosecuting Bastardy Proceedings, Contract Must be
Fair, Free From Fraud, and Founded on Good and Suf-
ficient Consideration; Consideration of $50 for Complete
Release Held Not Sufficient to Preclude Bringing Bastardy
Proceedings.*

In this state, and in states with like or similar statutes,
the mother of a bastard child may compromise and settle
with the reputed father her claims for damages against him.
But to preclude her from instituting and prosecuting bas-
tardy proceedings against her seducer, such contract must
be fair, free from fraud and deceit, and founded upon a good
and sufficient consideration.   Upon the facts and circum-
stances shown in this case the consideration of $50.00 for a
complete release *held* not to constitute a sufficient consider-
ation therefor.   (p. 685).

(Bastards, 7 C. J. §§ 64, 66, 68).

7.   SAME—*In Bastardy Proceedings, Only Preponderance of Evi-
dence is Necessary to Conviction, and Verdict Rendered on
Conflicting Evidence Will Not be Disturbed Unless Clearly
Wrong.*

In a bastardy proceeding only a preponderance of the evi-
dence is necessary to a conviction, and a verdict rendered on

conflicting evidence will not be disturbed unless it is clearly wrong.   (p. 687).

(Appeal and Error, 4 C. J. § 2836; Bastards, 7 C. J. §§ 128, 170).

NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, Nicholas County.

Bastardy proceedings by Lucile Pope against J. H. Kincaid.   Judgment against defendant, and he brings error.

*Affirmed.*

*Alderson, Eddy & Dillinger,* and *Morton & Wooddell,* for plaintiff in error.

*Emmett Horan,* for defendant in error.

WOODS, JUDGE:

The writ of error was issued in this case to review the proceedings in a case of bastardy prosecuted by Lucile Pope against the plaintiff in error.   Upon the trial in the circuit court the plaintiff in error, hereinafter called the defendant, was adjudged to be the father of the illegitimate child of the said complainant, Lucile Pope, and the usual order and judgment was entered by the court for the support of such child, as provided by statute.

In 1921, the complainant, then a girl of fifteen, came to Richwood, where she secured work in a clothes-pin factory. She became acquainted with the defendant Kincaid, a widower, aged fifty, who was the owner of a large store and also an extensive dealer in automobiles.   Soon thereafter, according to her testimony, she was induced to come to his apartment, where he lived alone.   Their liaison continued from the spring of 1922 until January of the following year. As a result thereof she became *enceinte* a few days after Christmas, 1922.   She acquainted defendant with the fact, and he gave her medicine on two different occasions to produce an abortion.   In May, 1923, her condition became apparent to factory officials and she was discharged.   She was taken in a car to Weston, and finally found her way to Mrs. Mary Mullens, at Rivesville (near Fairmont), where the child was born in September.   While at Rivesville, sometime in July, she received the following letter from the defendant:

"For Economical Transportation.
CHEVROLET

J. H. Kincaid,
Richwood, W. Va.
July 2, 1923.

Miss Lucile, Pope,

I will answer your letter I received a few days ago glad you are well and I take haveing a good time,

I note what you say in your letter I have ben fair, I think the way you are trying to do as I told you it is a scheme that you are trying to pull to get some money now I know to much, to be scared in to any thing as you threaten as to your age. I know that you are helpless there. you have no clue whatever. So you can not scare any one, if you had acted half way decent. I you may have talked. you say you are broke why did you not make your friend at Camden on Gauley that you .stayed with, gave you some money.

why did Earl leave Richwood, you had him scared when you was at Susie. you layed up stars with some one. now if you want $50.00 I will send you it and let me a lone find enclosed a contract you sign it and return it at once and I will send you the money at once.

if you dont sign this, I will stand you a suit Be fore I will pay any more, I have all the proof I need, when it comes to it.

. I. sent you a check to the Hospital for $10.00 what be came of that.

let me hear from you

It is not because I half to that I am giving you this, but just to help you out. if you want this money signed this Contract and return it at once, and I will send you the money at once

Yours Truly,"

The contract referred to in the foregoing letter is as follows:

"Richwood, W. Va.
July, 2) 1923

This contract made and entered in to be tween Lucile Pope and J. H. Kincaid this the 2 Day of July 1923 for the consideration of the sum of

$50.00 that I will not sue or bring suit and go in
to any more detail or cause him any fouther
trouble, as to swearing of a Cild to him,
                    Signed; Lucile Pope
                              and Return.''

The complainant signed and returned this contract to de-
fendant and later received a check from him for $50.00.

Shortly after the birth of the child, both mother and child
were taken in charge by a woman who looked after homeless
girls, and both placed with the Salvation Army in Fairmont.
From there, complainant was sent back to a woman social
worker at Richwood. In company with this social worker
she went to the office of the prosecuting attorney of Nich-
olas county, and as a result, a warrant charging defendant
with the paternity of her child, was issued. The defendant
enters a complete denial of any criminal intimacy with the
complainant. He admits that she informed him of her con-
dition in January, 1923; that he gave her the medicine, but
that it was Chamberlain's Diarrhoea Remedy, and was not
given for the purpose of producing an abortion. He states
that she threatened him with prosecution, and sought to ex-
tort money by threats. He denies sending her away from
Richwood, or having any part in so doing. He admits writing
the letter of July 2, 1923, and that he prepared the contract
and inclosed it for her to sign and return. He introduced
three witnesses who testified that they had had illicit inter-
course with complainant during the month of December—
the period of gestation; and other witnesses who stated that
they had heard complainant make statements before and at
the birth of the child that its father was another than de-
fendant. In corroboration of the complainant's statement,
a witness was produced who saw Kincaid give her the medi-
cine, and who stated that the same did not correspond to the
medicine he claims to have given her. Two witnesses stated
that it was a red medicine with no wrapper or directions on
the bottle and that complainant ''became sick and threw up''
as a result of taking it. The letter and contract are features
in corroboration of the complainant's testimony that there
had been criminal intimacy between her and the defendant.

The assignments of error relied upon by the defendant will be considered in their logical order.

The first assignment of error is that the plaintiff was a minor and that the suit should have been prosecuted by her next friend. This is without merit. Code, Chap. 80, sec. 3, specifically provides that in bastardy proceedings the action may be prosecuted in "the name of the woman". In *Pierce* v. *Williams,* 95 W. Va. 218, it is held that it is not necessary that a next friend be appointed in a bastardy proceeding for the prosecutrix who is a minor, nor that the suit should have been prosecuted by her next friend.

The second assignment is that the court erred in permitting the child of complainant to be exhibited to the jury on the trial, and in allowing the prosecuting attorney to comment thereon in his argument. This point does not seem to have ever been decided by this Court. The weight of authority in the United States seems to be against the admission of parol testimony as to the resemblance of the child to the putative father; the cases generally proceeding on the theory that the opinion of witnesses cannot be received for that purpose. While the same conflict exists upon whether the child can be exhibited to the jury as evidence of relationship, the great weight of authority is in favor of such exhibition. This doctrine is upheld by the decisions of the courts from the states of Alabama, Arkansas, Connecticut, Georgia, Kansas, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, North Carolina, Ohio and Pennsylvania. Such reported cases as hold to the contrary, are confined to the states of Illinois, Indiana, Maine, Minnesota, Nebraska and Wisconsin. The exhibition of the child in bastardy proceedings has long been practiced in the Courts of North Carolina, and held to be founded in reason and common observation. *Stubblefield* v. *Woodruff,* 67 N. C. 89. The jury may take into consideration the resemblance between the child and the putative father if they find such a resemblance to exist. *State* v. *Saidell,* 70 N. H. 174; *Finnegan* v. *Dugan,* 14 Allen (Mass.) 197. On the trial of the questions of *partus suppositio,* where the parties are before the jury, and the latter can make the comparison for themselves, whatever resemblance is discovered may be a circumstance, in connection with others, to be

considered. *Jones* v. *Jones*, 45 Md. 145. In *Scott* v. *Donnovan*, 153 Mass. 378, the court squarely held that on a trial of complaint under the Massachusetts bastardy act the child may be exhibited to the jury regardless of age; that the youth of the child goes rather to the weight of the evidence. It is a matter of common knowledge that the practice of bringing before the jury, on trials of this nature, the child whose paternity is sought to be established, has been generally followed in the circuit courts of this state. In view of this fact and in harmony with the holdings of the courts of our country generally, our conclusion is that there was no error in permitting the child to be exhibited to the jury as evidence of the alleged paternity, and in corroboration of the testimony of the complainant. It was not improper therefore for counsel to comment on the subject in his argument. The counsel had a right to argue all the evidence and its incidents as well; among those incidents were the production and identification of the child, its appearance and features, as observed by the jury and by them compared with those of the defendant. This thought is aptly put in *Gilmanton* v. *Ham*, 38 N. H. 108: "Under the well established physiological law that like begets like, and that generally there is a resemblance more or less strong and striking, between the parent and his child, it was a fair matter of argument before the jury by the counsel on both sides, whether or not there had been anything in the complexion, appearance and features of the child which the witness (mother) had produced and identified before them, tending to indicate its other parent."

The third assignment relates to the giving and refusal by the court of certain instructions.

The defendant complains that the following instruction was not given to the jury by the court:

> "The Court instructs the jury that if they believe from the evidence that the prosecutrix, Lucile Pope, indulged in promiscuous sexual intercourse with men other than James H. Kincaid at or about the 28th day of December, 1922, or within three weeks prior or three weeks subsequent to that date, then the prosecutrix cannot, as a matter of law, state who was the father of her bastard child, de-

livered on the 28th day of September, 1923, be-
cause, if she submitted herself to the embraces of,
and had sexual intercourse with, other men on or
about the 28th day of December, 1922, or within
three weeks prior or three weeks subsequent to that
date, it is impossible for her, in view of her phys-
ical organization and for psychological reasons to
state positively who is the father of her child. The
jury are further instructed that, if they believe
from the evidence that the said prosecutrix did
have promiscuous sexual intercourse with men
other than the defendant on or about the 28th day
of December, 1922, or within three weeks prior or
three weeks subsequent to that date, they must find
for the defendant.''

The rule is stated in 7 C. J. 994 to be: ''Proof of connec-
tion with another man does not necessitate a finding for the
defendant and is merely a circumstance to be considered in
determining the child's parentage.'' This is supported by
the decisions. In *Swisher* v. *Malone,* 31 W. Va. 442, it was
held that the defendant in a bastardy proceeding will not
be permitted to introduce evidence to prove that the com-
plainant has at any time had carnal connection with other
men, unless such connection had occurred within such a period
before the commencement of her gestation that it was prob-
able that one of such other persons may have been the father
of the child. The issue in the instant case is, Is the appellant
the father of the child? Evidence that other persons had
sexual intercourse with the complainant, at or near the time
the child was begotten, would raise a doubt as to the paternity
of the bastard child, but, if it appears by a preponderance
of all the facts and circumstances in proof that the defendant
was the father of the child, then a jury would be justified in
so finding. *Johnson* v. *State,* 133 Wis. 453. The law as
we understand it to obtain in this state was properly
given to the jury in one of defendant's instructions to the
effect that, if the jury believe from the evidence that the
prosecutrix had sexual intercourse with any other party or
parties on or about the period of gestation then the jury
should take such acts of sexual intercourse into consideration
in passing upon the paternity of the child of which the com-

plainant was delivered, and as to whether or not some person other than the defendant is the father of said child. Hence we conclude that the jury was properly instructed upon this particular phase of the case.

Defendant's instruction No. 9 had two vices: It called attention of the jury to particular facts in the case, and is covered by other proper instructions. The court committed no error in refusing it.

The defendant's objection to plaintiff's instruction No. 1 is not tenable. This instruction is to the effect that if the jury believed from a preponderance of the evidence in this case that the defendant was the father of the complainant's bastard child, they should so find, even though they may believe that said complainant is unchaste in character. This is the law as stated in *Swisher* v. *Malone, supra.*

The defendant's other objection goes to plaintiff's instruction No. 6:

> "The court instructs the jury that even though the jury believe from the evidence that the plaintiff, Lucile Pope, did enter into a contract with the defendant, in regard to said charges against him being the father of her bastard child, that that would not prevent her from bringing this action against him, and would not prevent her right to recover."

A consideration of the question here raised makes an examination of the testimony relating to said contract necessary. The plaintiff admits signing it and receiving the $50.00 mentioned in the letter. She was nearing the period of her travail. She was practically homeless; an object of charity in the home where she was staying and being cared for. Under these conditions this paper was executed. Contracts made in compromise of paternity cases before suit, that provide for the care and sustenance of the child, who in the absence of such provision being made would become a charge upon the public, are sometimes sanctioned by the courts. When they are fair and adequate to achieve this object, courts recognize their binding effect; otherwise they will not. The law is stated in *Burr* v. *Phares,* 81 W. Va. 160: "To pre-

clude her from instituting and prosecuting bastardy proceedings against her seducer, such contract must be fair, free from fraud and deceit, and founded upon a good and sufficient consideration.'' In that case the plaintiff was 22 years of age and the defendant 35. The plaintiff was in her own home, surrounded by her relatives, and defendant visited her at her home and secured her signature to a contract, providing for a settlement of the case without suit, and the consideration paid was $25.00. The court held that it constituted no bar to a suit. The circumstances surrounding the execution of the contract in the instant case need only to be compared with that of *Burr* v. *Phares* to determine that the contract pleaded here clearly does not measure up to the requirements of the law, creating a bar to this action. To hold it so, would be unconscionable. The last instruction complained of was therefore properly given.

By the fourth assignment of error exception is taken to the statement of the prosecuting attorney that he desired the stenographer in his office also to take down the testimony of the defendant. This statement was made when the defendant went on the stand as a witness on his own behalf, and in the presence of the jury. Upon the objection made by counsel for defendant to the statement as being prejudicial to the defendant's case, the court instructed the jury to disregard said statement and not to allow it to have any effect on their verdict. In the conduct of the trial there are many occurrences bearing favorably or unfavorably upon one or the other of the parties, which are difficult for the trial court, and beyond the power of this court, to correct. Fortunately, however, for litigants, the ingenuity of counsel upon the one side is usually counterbalanced by the tact of counsel on the other, so that the substantial rights of the parties are generally preserved. In the verbal tilt between opposing counsel over the point raised here the cause of the defendant did not suffer. Jurors are not so easily influenced that a matter of this kind will affect their verdict. The statement excepted to here we feel sure was not made with any intention of prejudicing the rights of the defendant. It is only where there has been manifest injustice occasioned, in which the power

of the trial court for correction has not been properly used, that this court may intervene by reversal. The emphatic words of protest voiced by able counsel for defendant to the action of the prosecuting attorney, together with the admonition of the court, cured any error, if error it was, of which the defendant can complain.

The last assignment of error is that the evidence is not sufficient to support the verdict. It is insisted by counsel for defendant that complainant's testimony is without corroboration. We do not so view it. Evidence of interest in the complainant after learning of her condition is corroborative of her evidence against him. *State* v. *Engstrom*, 145 Iowa 205. It was this principle that justified the admission of the testimony in the instant case, tending to show that the defendant attempted to aid in procuring an abortion. True, the defendant denies any complicity in such act. He admits giving her a bottle of medicine, but, as to the character of it, he is flatly contradicted by the woman in whose home the complainant lived, and who was present when the bottle was delivered. The last mentioned witness later carried a sealed letter from complainant to defendant and received from him another bottle of a liquid "that looked like the other" medicine. The complainant is supported by this same witness and witness' husband to the effect that complainant took the medicine and became ill as a result of taking it. Again, does not a reasonable construction of the language of the letter and the contract introduced in evidence amount to an admission by him that there had been a criminal intimacy between him and the complainant? Can they be read in any other light? Like Frankenstein he is undone by the work of his own creation. The principle that obtains in the courts throughout all jurisdictions is, that in cases of this nature the finding of a jury will not be set aside, as against the weight of evidence, unless it is a very clear case. *Pierce* v. *Williams*, *supra; Belford* v. *State*, 96 Ark. 274; *Higley* v. *Bostic*, 79 Conn. 97; *West* v. *State*, 84 Ga. 527; *People* v. *Guentner*, 160 Ill. A. 279; *McClellan* v. *State*, 54 Ind. A. 144; *State* v. *Seevers*, 108 Ia. 738; *Earp* v. *Commonwealth* (Ky.), 9 Dana 301; *State* v. *Veek*, 80 Minn. 221; *Cowan* v. *Ertel*, 95 Nebr. 380;

*State* v. *Lagasse*, 76 N. H. 114; *Ruff* v. *Kebler*, 62 N. J. L. 186; *State* v. *McKnight*, 7 N. D. 444, and *Conklin* v. *Niles*, 62 Vt. 104.

The credibility of the prosecuting witness as well as of the defendant was a question peculiarly for the jury. Either the complainant testified falsely or the defendant did. There was a flat contradiction in their statement as to the culpable act in controversy. There was corroboratory testimony in favor of both. True the complainant is contradicted on material matters. But this court has time and again held that mere preponderance in the number of witnesses is not sufficient. The jury had the witnesses before them, observed their demeanor on the stand, and had a right to believe one as against many. Then the child was before the jury. We are of course unable to say what weight this had with the jury, or how far it may have properly tended to support the mother's claim. *Higley* v. *Bostic, supra*. It was for the jury to determine the issue in the first instance, and in the second place for the trial-judge to grant a new trial if he thought injustice had been done by the verdict of the jury. The jury having found a verdict giving credibility to the statement of the prosecuting witness, and the trial-judge having refused to set aside, this court will not interfere. *Pierce* v. *Williams, supra; Walke* v. *Collieries Co.*, 94 W. Va. 38; *Wilson* v. *Johnson*, 72 W. Va. 742; *Stone* v. *Bank*, 72 W. Va. 171; *Coalmer* v. *Barrett*, 61 W. Va. 237. Certainly the learned circuit judge had a better opportunity to judge of the credibility of the witnesses than this court can possibly have, and, he having expressed his satisfaction as to the verdict of the jury by entering judgment thereon, this court will not reverse that judgment.

*Affirmed.*