Tᴄᴇ Pᴇᴏᴘʟᴇ *ex rel.* Fae Cullison, Defendant in Error, *vs.*
Gᴏᴠᴇ Dɪʟᴇ, Plaintiff in Error.

*Opinion filed December 17, 1931.*

Gᴇᴏʀɢᴇ W. Lᴀᴄᴋᴇʏ, for plaintiff in error.

Gᴜʏ E. McGᴀᴜɢʜᴇʏ, State's Attorney, for defendant
in error.

Mr. Jᴜsᴛɪᴄᴇ Hᴇᴀʀᴅ delivered the opinion of the court:

This cause is here, by leave of court, on *certiorari* to
review a judgment of the Appellate Court for the Fourth
District affirming a judgment of the county court of Law-
rence county against plantiff in error, Gove Dile, in a pro-
ceeding instituted against him under the Bastardy act, on
complaint of Fae Cullison.

Fae Cullison, the prosecutrix, was married August 3,
1916, to Lester Cullison at Lawrenceville, Illinois. They
resided together, undivorced, until August, 1926, when the
husband left Lawrenceville and went to Hammond to work.
He sent for her in November, and she remained with him

until December 29, 1926, when she returned to Lawrenceville and lived with Pearl Watts, on Thirteenth street, for about ten days, when she rented a house on Sixteenth street, where she lived until the first week in May, when she moved to Locust street, from whence she moved to Dubois street on May 24, 1927. The husband returned to Lawrenceville in January, 1927, where he remained until March 22, 1927, and then returned to Hammond. Early in September Mrs. Cullison went to Hammond for a couple of weeks, when she returned to Lawrenceville. The husband returned home about October 1, 1927, and lived with his wife until the time of the trial. Two girl children were born of this marriage. They were twelve and thirteen years of age at the time of the trial and at all times had lived with their mother. On March 9, 1928, Mrs. Cullison gave birth to a child, carried for the full period of gestation.

In *Robinson* v. *Ruprecht*, 191 Ill. 424, it is said: "The law raises the presumption that Gottlieb, the legal husband of said Johannah, was the father of her children. The presumption is not, however, conclusive but is rebuttable. It appeared in the proof that there was no possibility of access to the mother on the part of the said Gottlieb at the time of the conception of either of these appellee children. In the course of nature he could not have been the father of either of them. In such state of case the presumption cannot prevail.—1 Greenleaf on Evidence, sec. 128, note c; 3 Am. & Eng. Ency. of Law, (2d ed.) 876, 877."

Fae Cullison testified that she had not seen her husband from March 27, 1927, until October, 1927, and that Gove Dile was the father of the child born March 9, 1928. Other witnesses were called who testified they had not seen Cullison in Lawrenceville from March to October, 1927, but their testimony is of such a character as to have little probative value to demonstrate the impossibility of access of Cullison to his wife during the time in question. No witnesses were called from Hammond to prove such inacces-

sibility. Hammond is distant seven to nine hours' travel from Lawrenceville, and the evidence shows that there is a great deal of travel between the two places. Mrs. Cullison further testified: "I went to Pearl Watts' house. She lived on Charles and Thirteenth streets. Lived there ten days, then got a house over on Sixteenth street. It was in the winter time—about the 10th of January. Gove came down and put up my stove for me—he and another fellow—and he was there all his evenings from the time he got off work. Would come in from work and we would go for a drive, and then after we had come home and had supper, nine times out of ten we would go some place again, and then he would put the car up and come back and spend the night with me and have sexual relations at that time. On a number of occasions from January to the first week in May, when I moved from there to Locust street, in Lawrenceville, he was there the same with me as on Sixteenth street and I had sexual relations with him there. I next moved on Dubois, June 24, 1927, in the property of Mrs. Venus, where the relations with Gove Dile were the same as the other two places. He made his home with me. He had a room at Mrs. Dukes' and his clothes were there. He had his dinner and supper with me when he came from work. Saturday afternoon he was there and Sundays he was there. I slept with him and had sexual relations with him and I became pregnant in June, 1927."

Various witnesses were called who testified to seeing plaintiff in error going to and from his noon and evening meals at Mrs. Cullison's, but no witness was called who saw any improper or indiscreet relations on the part of either. Plaintiff in error testified admitting that he had taken his noon and evening meals at the home of the prosecutrix but denied *in toto* her testimony as to the improper relations and that he was the father of her child. He was corroborated to some extent by the keeper of the rooming house where he roomed, and her daughter, who each tes-

tified that they saw him nearly every evening after supper and that the condition of his room each morning showed that it had been occupied each night during the disputed time. Lester Cullison, the husband of the prosecutrix, testified that he had not seen his wife from March 22 until September, 1927. The reliability of the prosecutrix as a witness is weakened by the facts that witnesses called by her testified to seeing plaintiff in error leaving after his evening meals, by the fact that during the entire time of her residence on Sixteenth, Locust and Dubois streets her two girls were living with her, that her husband was living with her during the greater part of her residence on Sixteenth street, and by the further unexplained fact that, although suffering from rheumatism and syphilis and being in needy circumstances, she did not file her complaint in this case until within three weeks of its being barred by the Statute of Limitations.

We have not purported to set out the entire testimony but only so much as is necessary to show that there were two clearly defined controverted questions of fact, upon each of which the burden of proof rested upon the prosecutrix, and that this case was not one of those in which the jury could not reasonably have found the facts differently.

It is contended by plaintiff in error that it was error to allow the husband of the prosecutrix to testify as to the non-existence of sexual relations between him and the prosecutrix during the time in which she became pregnant. In England, in 1734, in *King* v. *Reading,* Cas. t. Hardw. 79, in a filiation proceeding, Lord Hardwicke stated the law to be that a wife was a competent witness to prove the adultery between herself and the defendant because the secrecy of the act would admit of no other proof, but that it was improper, on account of the interest of the wife in relieving her husband of the burden, to charge the maintenance of the child against the defendant upon the mother's sole and uncorroborated testimony of the non-access of the

husband. This rule was varied in 1777, when Lord Mansfield, in *Goodright* v. *Moss,* 2 Cowp. 591, announced as the law of England, founded in decency, morality and policy, that neither husband nor wife would be permitted as a witness to bastardize the issue of the wife after marriage by testifying to the non-access of the husband. In this country in earlier times there was much diversity of opinion as to the competency of the wife. There does not seem to have been any as to the incompetency of the husband. This led to the enactment of statutes on the subject in many of the States, while in some the old English law still prevails. In this State under the early statutes the question could not arise, as only unmarried women were given the benefit of those statutes. In 1919 the word "unmarried" was elided from the Bastardy act and married women were given the benefit of the act. By this act the prosecutrix is specifically given the unqualified right to testify. By no law has the common law rule as to the husband been removed so as to allow him to testify to his non-access at the time of the conception of the child. In *Pease* v. *Hubbard,* 37 Ill. 257, it is said: "The father is primarily liable for the support of his offspring. In the event of his failure to perform this duty it devolves upon the mother, and in case of her inability the child becomes a public charge as a pauper. This law was designed to place the burden where it properly belongs—upon the immoral father and prevent him from casting it either on the mother or the county." This language is quoted with approval in *McCoy* v. *People,* 71 Ill. 111, *People* v. *Starr,* 50 id. 52, and *Holcomb* v. *People,* 79 id. 409. A suit of this nature can only be instituted by the mother, and she has a right to compromise and dismiss the same. (*Coleman* v. *Frum,* 3 Scam. 378.) In *McCoy* v. *People, supra,* it was held to be the well-settled law as declared by this court that this is a civil proceeding and that the prosecutrix is the real party in interest, using the name of the People as plaintiff as a mere

matter of form. In none of the various holdings in England or in the several States has the husband been held a competent witness for the purpose of showing his non-access. Lester Cullison, the husband, was not a competent witness in this case. He came within none of the exceptions to the provision of the Evidence act prohibiting a husband from testifying in favor of his wife. His testimony was upon a vital point in controversy—upon a question of fact which was for the jury to determine upon competent evidence. His evidence was prejudicial to plaintiff in error, and its admission was therefore reversible error.

The judgments of the Appellate Court and of the county court are reversed and the cause remanded to the county court of Lawrence county.    *Reversed and remanded.*