PEARL J. OHLINGER *v.* J. E. ROUSH

(No. 8611)

Submitted September 1, 1937. Decided October 12, 1937.

*S. K. Vaught, W. F. Boggess* and *Musgrave & Blessing,* for plaintiff in error.

*J. G. F. Johnson* and *William H. Rardin,* for defendant in error.

Fox, Judge:

This is an action of trespass on the case in which the plaintiff charges the defendant with alienating the affections of, and carnal knowledge of, his wife, resulting in her giving birth to a child. In his original declaration, the birth of a child is alleged as the result of such carnal knowledge; and in his amended declaration damages are alleged on account of the birth of a child "resulting from the preparation for, the birth of, and the injury arising there out of the birth of said child, and the care and attention demanded by the said infant; and also for this, the said plaintiff is compelled to and does support and maintain the said infant child, which is the result of the said willful, illicit and improper intercourse." He lays his damages at $8,000.00, made up of $5,000.00 actual damages, $2,700.00 exemplary damages and $300.00 for medical service and hospital bills. To these declarations, the defendant pleaded not guilty, and a trial was had, resulting in a verdict for the plaintiff for $2,500.00 on which the court entered judgment over the objection of the defendant, after a motion to set aside the same had been overruled. To this action of the trial court the defendant prosecutes this writ.

The alleged errors relied upon by counsel for the defendant in their brief, nine in number, may be classified as follows: (1) Lack of evidence to sustain the verdict and the excessive amount thereof; (2) the introduction of the wife as a witness for the plaintiff, the testimony of the wife that her child was conceived through acts of sexual intercourse with the defendant, and the exhibition of the child before the jury for the purpose of comparing its features with those of the defendant; and (3) the entry of a judgment in a case where, it is alleged, sound public policy affecting the relationship between husband and wife and the birth of children was violated.

There is ample evidence to sustain the verdict, and the amount thereof cannot be held to be excessive. These were jury questions with which this court will interfere only where the error in the jury's finding is plainly apparent. It must be remembered that the right of the plaintiff to recover did not depend on the number of acts of adultery charged, whether there was seduction, persuasion or force, or whether or not the child mentioned in the evidence was conceived as the result of intercourse between the defendant and the wife of the plaintiff. *Bedan* v. *Turney*, 99 Cal. 649, 34 P. 442; *Egbert* v. *Greenwalt*, 44 Mich. 245, 6 N. W. 654, 38 Am. Rep. 260; 1 Bishop on Marriage and Divorce, Section 1365-6. One act of adultery, entirely independent of the birth of the child, was sufficient to entitle the plaintiff to recover. The jury, on conflicting evidence, having found the defendant guilty, its verdict cannot be disturbed, unless it was founded, in whole or in part, on improper evidence. This question will be hereafter considered.

Nor can fault be found with the amount of the verdict, unless it be held that improper evidence on that point was permitted to go to the jury. The right of a husband to the affection and companionship of his wife, the exclusive right of sexual intercourse with her, and the right to beget the children to which she may give birth, are rights the value of which cannot easily be measured. The disgrace and humiliation which the injured party suffers cannot be gauged by the same rules as those em-

ployed in cases where only pecuniary injury is sustained, and where the sanctity of the home and family and one's standing in the community in which he lives are not involved. The inevitable suspicion cast upon the offspring of the marriage may, in such circumstances, be considered. *Powell* v. *Strickland*, 163 N. C. 393, 79 S. E. 872. Then, punitive damages may be allowed. In cases of this character, where the sole question is the amount of the verdict, it is only where it is apparent that passion and prejudice have affected the finding that it will be set aside.

No public policy has been violated by the entertaining of this action. Court records are replete with cases of this character. The right of a husband to the companionship of his wife, and the conjugal rights which appertain to the marriage state, are rights recognized by our law from the earliest times, and which could be vindicated by an appeal to the courts. Plaintiff had the undoubted right to institute and prosecute this action. Whether, in the prosecution of this action, rules of public policy have been violated in the issues permitted to be raised, and the testimony introduced, is a question which we will undertake to determine.

At common law, neither husband or wife was competent to testify for or against the other, but this rule has been changed by our statute (Code 57-3-2) which provides that: "Husband and wife shall be competent witnesses to testify for and against each other in all cases, civil and criminal, except as otherwise provided." Provisions of the statute limiting this competency do not affect the statute quoted as applied to civil cases, except as to confidential communications (Code 57-3-4). Therefore, it seems clear that the plaintiff had the right to introduce his wife as a witness and attempt to show by her testimony the alleged carnal relationship between herself and the defendant.

But, admitting the competency of the wife to testify, the more difficult question remains: Could the wife in a case of this character testify as to matters affecting the legitimacy of her child? So far as her testimony of carnal

intercourse with the defendant cast a suspicion upon the legitimacy of her child, an affirmative answer to the question must be given. *Wallace* v. *Wallace*, 137 Iowa 37, 114 N. W. 527, 14 L. R. A. (N. S.) 544, 126 Am. St. Rep. 253, 267, 15 Ann. Cas. 761. We cannot limit the effect of that testimony. But where she is living and co-habiting with her husband at the time the child was conceived, can she go further and state that her child is illegitimate? It is well settled that where the legitimacy of a child is in question "non-access cannot be proven by either the husband or the wife, whether the action be civil or criminal, or whether the proceeding is one of settlement or bastardy, or to recover property claimed as heir-at-law." 3 R. C. L. 732; 7 Corpus Juris, 988; Long on Domestic Relations, Section 243; Peck on Domestic Relations, Section 105; 1 Schouler on Domestic Relations, Section 696; *Goodknight* v. *Moss*, 2 Cowp. 591, 98 Eng. Reprints 1257; *Mink* v. *State*, 60 Wis. 583, 19 N. W. 445, 50 Am. Rep. 386; *State* v. *Reed*, 107 W. Va. 563, 149 S. E. 669; *Wallace* v. *Wallace*, *supra;* *Dennison* v. *Page*, 29 Pa. St. Rep. 420, 72 Am. Dec. 644. This rule applies in cases of criminal conversation. *Egbert* v. *Greenwalt, supra.* It is quite evident that the purpose of the inhibition against the husband or wife to testify as to non-access was to prevent them from bastardizing their issue by the testimony of either. This being true, how can it be contended that a wife may by her direct testimony bastardize her issue, when she is prohibited from so doing by testifying as to non-access? We hold it to be the policy of the law to prevent any testimony of the husband or the wife tending directly to bastardize the issue of a marriage between them, whether by showing non-access or otherwise. It should be stated here that evidence, other than that of the husband or wife, tending to show that the defendant was the father of the child of Mrs. Ohlinger was properly admitted, both on the question of the alleged sexual intercourse, and the amount of damages, if any, to which the plaintiff might have been entitled.

It seems important at this point to consider the testimony of Mrs. Ohlinger which, the defendant says, tends

to bastardize her issue, as well as the background of that testimony. The original and amended declarations refer to the birth of a child, and the first count of the original declaration expressly alleges that as a result of the carnal relations between the defendant and the wife of the plaintiff, a child was conceived and born. The effect of that allegation, if sustained by proof, was to bastardize such child, not in a technical sense such as to bar its right to inherit from the plaintiff, but in the sense of casting upon it the stigma which attaches to such a status, a stigma which time rarely effaces.

Following these allegations in the declarations, we find the testimony of the wife as to acts of sexual intercourse with the defendant at a date when, considering the birth of the child, he could have been its father. As stated above, we think this testimony was proper. But she did not stop there. When she was recalled as a witness the record shows the following questions, answers and other proceedings:

"Q. Mrs. Ohlinger, you have testified to the various and certain acts of sexual intercourse with Mr. Ed Roush and was conceived of child. Was this the child you have here in your arms now.
A. Yes, sir.
Q. It is?
A. Yes, sir.
Mr. Johnson: The Court please, we would like to introduce the child in evidence. We would like to have Mr. Roush stand up with the baby, so the jury can compare them.
Mr. Musgrave: We object to the introduction of the baby but if it goes in let Arthur Ohlinger stand up at the same time.
Argument.
The Court: That isn't proper to do that now.
Argument.
Mr. Johnson: Pearl, stand up there with the baby and remove your glasses. Remove your glasses, Mr. Roush. At the request of plaintiff counsel Mr. Ed Roush and Pearl Ohlinger, the mother and the baby stood before the jury.
Objection. Exception."

The only reasonable interpretation of the testimony of Mrs. Ohlinger is that the child she held in her arms was conceived through acts of sexual intercourse with the defendant, and immediately following her statement, she and the defendant were required to stand before the jury, the child exhibited, and opportunity for comparison of features given. No more open and direct attack upon the legitimacy of this child can be imagined. We think the law forbids such testimony by the mother of a child, who, at the time of conception and birth, was living with her husband, and, as the record shows, was engaging in frequent acts of sexual intercourse with her husband, during the period when the child must have been conceived, and it was error to permit it to go to the jury. It is true that the question bearing on the parentage of the child was not objected to at the time, but the exhibition of the child to the jury immediately following was objected to, and is made the subject of a bill of exceptions. It may fairly be said that this objection extended to and covered the preliminary questions which identified the child and led up to its exhibition. Then the grounds relied upon in the motion for a new trial include an objection to the entire testimony of the wife. Objection to evidence in asserting grounds of a motion for a new trial saves the point. *State* v. *Noble,* 96 W. Va. 432, 123 S. E. 237. Notwithstanding the failure to object to the specific question, we hold that, in view of the circumstances, and the subsequent motion for a new trial, we are warranted in considering this error.

The testimony of the wife touching the legitimacy of her child was highly prejudicial to the defendant. A showing by proper evidence that he was the father of this child could have been taken into consideration in assessing damages. *Powell* v. *Strickland, supra;* and, of course, if he was the father of the child, his intercourse with plaintiff's wife was established and his liability fixed. It was a material question in the case. True, the case could have been established by showing sexual intercourse independently of the birth of the child, but the introduction of improper testimony touching so vital an

issue must be held prejudicial, even though there be other testimony in the case on which the jury might have found for the plaintiff.

It must be admitted that in most of the cases cited, the legitimacy of the child was in issue in the sense that its legal status was affected. That is not the case here. Furthermore, in *Stumm* v. *Hummel,* 39 Iowa 478, a criminal conversation case, an instruction was approved which referred to the exhibition of a child in the trial. On the other hand, the rule against testimony of husband or wife as to non-access has been applied to cases of the character now under consideration. *Egbert* v. *Greenwalt, supra.* And we hold that there is as much or more reason to apply the rule ·against such statements which are direct attacks on the legitimacy of the child, as where the attack is less direct, depending upon whether or not non-access is proven. The doctrine of the inhibition of testimony of husband and wife as to non-access is vigorously attacked in 4 Wigmore, Sections 2063-4, but it is too firmly established in this jurisdiction to warrant its overthrow, except for the most cogent reasons, and we are not convinced that it should be discarded and a new rule promulgated. As Lord Mansfield said, the prevailing rule is "founded in decency, morality and policy" and it should only be cast aside for most weighty reasons and on grounds of sound public policy. No such grounds exist in this case.

The judgment of the circuit court is reversed, and the case remanded for a new trial.

*Reversed; remanded.*