STATE OF WEST VIRGINIA

*v.*

WILLIAM DALLAS WILSON

(No. 11098)

Submitted April 13, 1960.        Decided June 7, 1960.

*L. W. Blankenship, Carl A. McComas,* for plaintiff in error.

*W. W. Barron,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for defendant in error.

BROWNING, PRESIDENT:

The defendant, William Dallas Wilson, sixteen years of age, was convicted of murder in the first degree in the Court of Common Pleas of Cabell County, and sentenced to life imprisonment, and an application for a writ of error and supersedeas was refused by the Circuit Court of Cabell County on August 31, 1959. This Court granted a writ of error and supersedeas on November 16, 1959. Errors assigned in this Court concern the giving of State's Instruction No. 1, which set forth the statutory definition of murder in the first degree, and No. 2, which instructed the jury that they could return one of two verdicts, murder in the first degree or not guilty, and the refusal of Defendant's Instructions Nos. 5, 6, 8 and 10, which would have presented to the jury the defendant's theory that, in killing the deceased, he was defending his mother against imminent and impending danger of death or bodily harm at the hands of the deceased, and would have permitted the jury to return a verdict of second degree murder, voluntary manslaughter or involuntary manslaughter, in addition to the two verdicts enumerated in State's Instruction No. 2.

The facts are substantially as follows: Deceased, Homer Buskirk, and defendant's mother were married in March, 1956, and lived together until a final

separation in July, 1958. During the course of the marriage there were numerous instances of mistreatment by the deceased of his wife and the defendant, and his brothers and sister. In October, 1958, defendant's mother obtained employment at the Pony Tavern in Huntington, West Virginia. Deceased was killed Sunday evening, October 28, 1958, at approximately 8:00 P.M. The events leading up to the killing occurred on Friday, Saturday and Sunday when deceased would sit in the tavern drinking beer while defendant's mother was on duty, and would threaten "to get her", curse and use abusive language toward her. On Friday night, defendant's mother became frightened and directed one of her sons, Ronnie Joe, to have defendant come in his car to take her home. Defendant did so and, because deceased was in a position to observe her movements, defendant's mother requested that she be let out at the home of a friend where she remained for a couple of hours before defendant picked her up and took her home. On Saturday, when defendant's mother went to work, deceased was present in the tavern, and, when she walked past his booth, lunged at her and threatened to kill her, and again cursed and abused her and told her to tell her sons that he would get them. On the same night, deceased struck Ronnie Joe in the mouth without provocation. Someone later called the police, but no arrests were made. On Sunday, deceased again was present in the tavern in an intoxicated condition, and, when defendant's mother served him beer, he grabbed her by the arm and again cursed and abused her. Defendant, his brother, Ronnie Joe, and one Gary Steele, subsequently came in to obtain the key to defendant's mother's home. Steele, who boarded with defendant's mother, was cursed and abused by the deceased at this time, as he had been previously cursed and abused on Saturday. The trio left the tavern and went to defendant's mother's home and discussed the situation with another brother. The three then went to Catlettsburg, Kentucky, the defendant driving. Defendant left Ronnie Joe and Steele at a restaurant, and went to a

friend's home where he borrowed a .22 caliber rifle. Defendant states that he then went to a drug store where he purchased shells, picked up Ronnie Joe and Steele, and the three returned to Huntington, defendant riding in the back seat, and parked across the street, which was 40' wide, from the tavern. Steele was sent to call deceased out. Deceased replied he would be out when he finished his beer, which he did, and fifteen or twenty minutes after having been called by Steele, deceased and two friends walked outside. Deceased walked past the front of the tavern, Ronnie Joe started the car, and deceased turned to move across the street, when defendant fired. The bullet struck deceased in the heart and he died shortly thereafter. As heretofore stated, defendant was convicted of murder in the first degree, and, on this writ of error, contends that the jury was improperly instructed as to the law of the case.

State's Instruction No. 1 is in the language of the statute defining murder in the first degree. Code, 61-2-1. The giving of an instruction substantially in the language of an applicable statute is not error. *State v. McCauley,* 130 W. Va. 401, 43 S. E. 2d. 454. Although there may be some conflict in other jurisdictions, there is substantial authority in accord with the rule of this jurisdiction that, where it clearly appears from the evidence that the homicide meets the statutory definition of murder in the first degree, it is not error for the trial court to instruct the jury to find the defendant guilty of murder in the first degree, or not guilty. *State v. Stevenson,* 114 W. Va. 458, 172 S. E. 533; *Bell v. Commonwealth,* 167 Va. 526, 189 S. E. 441; *State v. Bunk,* (N. J.), 73 A. 2d. 249; *People v. Dorman,* (Cal.), 172 P. 2d. 686; *Ellis v. People,* (Colo.), 164 P. 2d. 733; *State v. Germany,* (Kan.), 245 P. 2d. 981; *State v. Mays,* (N. C.), 35 S. E. 2d. 494; *Davis v. State,* (Ark.), 30 S. W. 2d. 830; *State v. Hayes,* (Mo.), 247 S. W. 165; *State v. Anderson,* (Wash.), 116 P. 2d. 346. Therefore, the only question for determination of this Court is wheth-

er the evidence in this case constitutes what is sometimes referred to as an extreme case in which the trial court has the duty to take from the jury the consideration of any offense charged in the indictment other than murder in the first degree, or, of course, to return a verdict of not guilty. Without detailing the evidence on the point, it clearly appears that defendant left the tavern, drove to Catlettsburg where a gun and shells were procured, returned to the tavern and then waited some fifteen or twenty minutes until deceased appeared when he fired the fatal shot. No evidence of an offense other than "Murder * * * by lying in wait * * *." was introduced, thus there was no error in the giving of State's Instruction No. 2, limiting the jury to a verdict of murder in the first degree or not guilty. It follows therefrom that it was not error to refuse Defendant's Instruction No. 10 telling the jury that they could return one of five verdicts: (1) Murder in the first degree; (2) murder in the second degree; (3) voluntary manslaughter; (4) involuntary manslaughter; and (5) not guilty.

In regard to the action of the trial court in refusing Defendant's Instructions Nos. 5, 6 and 8, it is, of course, the well established law of this jurisdiction that a person may defend his mother to the extent of taking the life of an aggressor if she is in imminent danger of death or great bodily harm. *State v. Banks,* 99 W. Va. 711, 129 S. E. 715; *State v. White,* 96 W. Va. 271, 122 S. E. 472; and *State v. Waldron,* 71 W. Va. 1, 75 S. E. 558. However, the evidence in this case falls far short of that required in such a case. Again, the evidence is clear that defendant personally had observed none of deceased's belligerent conduct, and at the time of the shooting, and for several hours previous thereto, deceased had done nothing, and was doing nothing, which indicated a present intent to carry out his threats. There was, therefore, no evidence upon which to base any instruction as to defendant's right to defend his mother against an imminent threat of death or great bodily harm. The jury was properly instruc-

ted as to its prerogative, should it find the prisoner guilty of murder in the first degree, of determining whether he should be punished by death or confinement in the penitentiary for life.

The judgements of the Common Pleas Court and the Circuit Court of Cabell County will be affirmed.

*Affirmed.*