STATE *ex rel.* NANCY WORLEY

*v.*

JACK LAVENDER

(No. 12182)

Submitted January 15, 1963.                    Decided July 9, 1963.

Calhoun, Judge, dissenting.

*E. W. Salisbury, T. B. Bickel, Jr.,* for appellant.

*C. Donald Robertson,* Attorney General, *J. Patrick Bower,* Assistant Attorney General, for appellee.

Browning, Judge:

Jack Lavender, hereinafter referred to as defendant, was convicted of bastardy in the Circuit Court of Boone County on January 23, 1962. A motion to set aside the verdict and to award a new trial was overruled and, upon application to this Court, an appeal and supersedeas was granted on June 4, 1962.

The warrant upon which defendant was tried is as follows:

> "Whereas, Nancy Worley, a married woman living separate and apart from her husband, and a resident of said County, has this day on oath before the undersigned, a Justice of the Peace of said County, accused one Jack Lavender of being the father of a female bastard child of which she was delivered on the 15th day of February, 1961; that the said Jack Lavender is not her husband; that said child was born to her after she had been living

separate and apart from her husband for one year and more; that she has not cohabited with her said husband during said separation; and that the said child was born after the expiration of said separation and while said separation continued."

A motion to quash the warrant and render summary judgment for defendant was made on the grounds: (1) the warrant does not allege that the separation between the complainant, Nancy Worley, and her husband continued to the date of the birth of the child; and (2) the warrant states that the child was born after the expiration of the separation and thus shows that the separation was not continuous from the birth of the child to the issuance of the warrant, which motion was overruled.

The evidence may be briefly stated as follows: Nancy Worley, the complaining witness, was married to Garland Worley in October, 1959, and thereafter resided with him, as man and wife, in Kanawha County, West Virginia, until January 13, 1960, when the parties separated, she going to her parents' home in Boone County where she has since resided. Sometime in June or July, 1960, the complaining witness engaged in one act of sexual intercourse with the defendant, Jack Lavender. The complaining witness testified over objection that she had seen her husband, Garland Worley, on but four occasions since the separation on January 13th, and on all of these occasions other witnesses were present. She further testified that she had not engaged in sexual intercourse with her husband since the date of the separation or with any person other than the defendant in the year preceding the birth of the child. She is corroborated as to the two instances in which her husband appeared in Boone County, that no opportunity for sexual intercourse was presented, by her mother, father and sister. The other two instances in which she saw her husband were at a hearing at which his probation was revoked and at his mother's funeral, which he attended under escort of prison authorities.

Garland Worley, the husband, also over objection, likewise denied that he had engaged in sexual intercourse with the complaining witness since the date of the separation and

further stated that since August 25, 1960, until the following January he was confined in the Medium Security Prison at Huttonsville, West Virginia.

The baby was born February 15, 1961, and, as stated by the complaining witness, which statement is uncontroverted, was nine weeks premature. Defendant admitted the one act of sexual intercourse, asserting it took place in June of 1960, and attempted, by another witness, to show that the complaining witness had engaged in sexual relations with others at approximately the time of conception.

Eight assignments of error are made in the petition; however, in the brief these assignments have been classified into three main issues: (1) in refusing defendant's instruction No. 2; (2) in overruling the motion to quash the warrant on the ground that the warrant does not state that the alleged separation continued until the date of the birth of the child; and (3) in pemitting Nancy Worley, the complainant, and her husband to testify as to nonaccess.

Defendant's instruction No. 2, as given, is as follows:

"The Court instructs the jury that when a child is born to a married woman it is presumed that the husband of the woman is the father of the child, and if she charges some other person with being the father of the child, then the burden is upon the State to prove that her husband did not *cohabit with* her within a period of one year's time prior to the birth of the child. The burden of proof does not lie upon the defendant to prove that the husband did *cohabit with* his wife during the period of one year, and you are further instructed that unless the state has proved unto you by strong and convincing evidence that the husband, Garland Wayne Worley, did not *cohabit with* his wife, then you are instructed to find the defendant not guilty." (Italics supplied.)

The instruction, as offered, would have substituted the words "have access to" for the words "cohabit with", and while the word "cohabit" generally means living together as man and wife in a common dwelling, Vol. 7A, Words and Phrases, Cohabit; Cohabitation, ". . . its popular and often

legal significance is to copulate. . . ." *DeBerry* v. *DeBerry,* 115 W. Va. 604, 606, 177 S. E. 440, 441. To the same effect are: *Martin* v. *Commonwealth,* 195 Va. 1107, 81 S. E. 2d 574; *Tarr* v. *Tarr,* 184 Va. 443, 35 S. E. 2d 401. See also: *Bracksmayer* v. *Bracksmayer,* 22 N.Y.S. 2d 110, 112; *Herrman* v. *Herrman,* 156 N.Y.S. 688. "Access", similarly has been held to mean sexual intercourse within the meaning of a paternity statute, *People, upon complaint of D* _____ v. *C* _____, 85 N.Y.S. 2d 751, 753, 194 Misc. 94; *Jackson* v. *Jackson* (Okla.), 76 P. 2d 1062, though at common law the term meant sexual intercourse, or the opportunity therefor, under the "four seas" rule.

Code, 48-7-1, is, in part, as follows:

> "Any unmarried woman may go before a justice of the county in which she resides and accuse any person of being the father of a bastard child of which she has been delivered. Such justice shall examine her under oath, and reduce her examination to writing and sign it. . . . If a married woman live separate and apart from her husband for the space of one year or more, and shall not at any time during such separation, cohabit with such husband she may, if she be delivered of a child at any time after such one year, and while such separation continues, accuse any person, other than her husband, of being the father of such child, in like manner, and the same proceedings shall thereupon be had, as if she were an unmarried woman."

It will be noted that the statute requires a married woman not only to live separate and apart from her husband, a condition not within the general meaning of "cohabitation", for the space of one year, but also not to *cohabit* with him at any time during such separation.

In *DeBerry* v. *DeBerry,* 115 W. Va. 604, 177 S. E. 440, the Court had under consideration Code, 48-2-14, which provides: "No divorce for adultery shall be granted . . . when it appears that the parties voluntarily *cohabited* after knowledge of the adultery. . . ." (Italics supplied.) In holding a single act of coition sufficient to invoke the statute, the Court said: ". . . The literal or derivative meaning of the word 'cohabit' is to live together while its popular and often

legal significance is to copulate. The latter interpretation was, in our opinion, intended by the legislature. . . ." We attribute a similar intent to the legislature in using the word "cohabit" in the statute invoked herein, thus restricting the term to its connotation of sexual intercourse. We, therefore, find no error in the modification of defendant's instruction No. 2 by the trial court. Moreover, the giving of an instruction substantially in the language of an applicable statute is not error. *State* v. *Wilson,* 145 W. Va. 261, 114 S. E. 2d 465; *State* v. *McCauley,* 130 W. Va. 401, 43 S. E. 2d 454.

There is likewise no error in the overruling of the motion to quash the warrant and to render summary judgment for the defendant. "The bastardy proceeding provided for by the statute, though criminal in form, is a civil, not a criminal, action." *State ex rel. Crouser* v. *Mercer,* 141 W. Va. 691, 92 S. E. 2d 745. However, in *Gabbart* v. *Mullins,* 122 W. Va. 282, 8 S. E. 2d 886, the Court in holding a warrant insufficient under the statute, said:

> "A careful reading would indicate that there are four elements of which the right of a married woman to recover for the support and maintenance of her bastard child is comprised: (a) She must have lived separate and apart from her husband for a space of one year or more; (b) she must not at any time during that separation have cohabited with her husband; (c) she must have been delivered of a child subsequent to the expiration of that year and while the separation continued; and (d) the defendant must be a person other than her husband.
>
> "This Court has heretofore dealt with the necessity of *proving* each of the conditions prescribed by statute as prerequisites of a married woman's right to recover under this same statute. . . . We are impressed with the fact that the conditions this Court has held indispensable to be established by the *proof* in a bastardy proceeding, are just as indispensable to be shown on the face of the written complaint and the warrant based thereon."

The warrant in that case omitted the allegations that the complainant, a married woman, had lived separate and apart from her husband for one year prior to the birth of the child

and had not at any time during the separation cohabited with her husband. The syllabus reads: "A bastardy warrant issued under Code, 48-7-1, upon the application of a married woman, must show upon its face that it is based upon a sworn complaint by her charging the defendant with the paternity of a child born to her after she had been living separate and apart from her husband for one year or more, that she had not cohabited with her husband during the separation, that the delivery took place after the expiration of that period and while the separation continued, and that the defendant is not her husband."

An examination of the warrant herein, heretofore quoted, shows that all indispensable elements were alleged, notwithstanding the use of the word "separation" for "period" in the last clause, wherein it is alleged ". . . the said child was born after the expiration of the said *separation* . . ." since such use is completely inconsistent with the remainder of the clause ". . . and while said separation continued."

The principal ground on which defendant relies for reversal, and the one which has given this Court immediate concern, is the question of the competency of the complainant, and her husband, to testify to their nonaccess during the one year period. A child conceived during wedlock is presumed to be legitimate, though such presumption is rebuttable, and under the rule announced by Lord Mansfield in *Goodright* v. *Moss, 2 Cowp. 591, 98 Eng. Rep. 1257,* " . . . it is a rule, founded in decency, morality and policy, that they [husband and wife] shall not be permitted to say after marriage, that they have had no connection, and therefore that the offspring is spurious; more especially the mother, who is the offending party."

The portion of Code, 48-7-1, heretofore quoted, relating to a married woman first appears in Chapter 80 of the Code of 1868. At the time of its addition the statute contained, and had for many years, a provision making the woman in a bastardy proceeding a competent witness. Section 4, Chapter 125, Virginia Code of 1849. This provision as to competency was deleted by Chapter 54, Acts of the Legislature,

1882. It has been held that the main purpose of the statute is to prevent an illegitimate child from becoming a charge upon the county by compelling the father to bear the burden of its maintenance and support. *State ex rel. Crouser v. Mercer,* 141 W. Va. 691, 92 S. E. 2d 745; *Holmes v. Clegg,* 131 W. Va. 449, 48 S. E. 2d 438; *State ex rel. Rufus v. Easley,* 129 W. Va. 410, 40 S. E. 2d 438. It has been stated also that "The statute, being remedial, should be construed liberally to effectuate its purpose", *State ex rel. Crouser v. Mercer,* 141 W. Va. 691, 705, 92 S. E. 2d 745, 753. We must, therefore, determine the effect of the statute upon the Mansfield rule, construing it liberally to effectuate its main purpose but bearing in mind the fact that the provision making the woman a competent witness was deleted therefrom by the Legislature in 1882.

The Mansfield rule was adopted early in this jurisdiction, *Bowles v. Bingham,* 2 Munf. (16 Va.) 442, decided in 1811, and has been generally followed in this country in the absence of statute. It has been severely criticized in 4 Wigmore, §§ 2063, 2064, and its binding effect questioned inasmuch as it was not announced until 1777, following the separation from England. *Loudon v. Loudon* (N. J., 1933), 168 Atl. 840. However, the majority of jurisdictions have adopted the rule, and have held it to be unchanged by statutes removing a witness' disqualification by reason of interest, *People ex rel. Wright v. Court of Sessions,* 45 Hun (N. Y.) 54; or by the provisions of a nonsupport statute making both husband and wife competent and compellable to testify to all relevant facts, including the fact of marriage and the parentage of the child or children, *Hicks v. State* (Tex., 1924), 263 S. W. 291; or, a statute making the mother a competent witness in bastardy proceedings, *Kennedy v. State* (Ark., 1915), 173 S. W. 842. See also 60 A.L.R. 380, and cases cited. Other jurisdictions, such as New Jersey, Minnesota, Montana, Vermont and Illinois have reached the opposite conclusion under variously worded statutes. 89 A.L.R. 912. In the Illinois case of *People ex rel. Cullison v. Dile,* 179 N. E. 93, the Court held that the wife could testify as to the nonaccess of her husband having been given the

unqualified right to testify by statute, but refused to permit the husband to so testify, maintaining that he was still bound by the common law rule.

In *Ohlinger* v. *Roush*, 119 W. Va. 272, 193 S. E. 328, an action for criminal conversation, the Court held it to be prejudicial error for the wife to testify as to the legitimacy of her child, notwithstanding the provisions of Code, 57-3-2, making a husband and wife competent witnesses to testify for or against each other in all cases, civil and criminal, stating: "It is well settled that where the legitimacy of a child is in question 'non-access cannot be proven by either the husband or the wife, whether the action be civil or criminal, or whether the proceeding is one of settlement or bastardy, or to recover property claimed as heir-at-law.' 3 R.C.L. 732; . . . We hold it to be the policy of the law to prevent any testimony of the husband or wife tending directly to bastardize the issue of a marriage between them, whether by showing nonaccess or otherwise." The Court further said: "The doctrine of the inhibition of testimony of husband and wife as to nonaccess is vigorously attacked in 4 Wigmore, §§ 2063, 2064, but it is too firmly established in this jurisdiction to warrant its overthrow, except for the most cogent reasons, and we are not convinced that it should be discarded and a new rule promulgated. As Lord Mansfield said, the prevailing rule is 'founded in decency, morality and policy,' and it should only be cast aside for most weighty reasons and on grounds of sound public policy."

In *State* v. *Reed*, 107 W. Va. 563, 149 S. E. 669, a proceeding brought under the nonsupport statute, Code, 48-8-1, as amended, a married woman sought to charge the defendant with the failure to support an alleged illegitimate child of which she was delivered. The mother testified that she and her husband had resided together, as husband and wife, until December, 1925, when he entered a tuberculosis sanitarium where he remained until death, but stated that they had not engaged in sexual intercourse for approximately two years prior to the birth of the child in August or September of 1926. The Court held the nonsupport and bastardy statutes to be *pari materia* and, with regard to the paternity

issue in the nonsupport proceeding, that the requisite conditions to enable a married woman to maintain such proceeding must be read into the nonsupport statute. The third syllabus point states: "On the question of the legitimacy of a child born to a married woman, in the absence of a statute authorizing her to testify to the non-access of her husband, she is incompetent to testify to that fact". It is true that in the opinion, on the question of the admissibility of such testimony, the Court said:

". . . the date of the birth of the child was well within one year of the time when it is admitted by the prosecutrix that she and her husband were living together as man and wife. She therefore comes within the inhibition of one year which is placed by the statute upon a married woman who seeks to bastardize her child.

"This statutory inhibition of one year which is placed on a married woman who seeks to charge the paternity of her child to a person other than her husband does not involve any new or startling principle of law. It is merely a modification of a clear and well settled principle of the common law. This rule was recognized and applied by Lord Mansfield in 1777 . . . ",

thereby indicating that the Mansfield rule might be modified in some respects, but the Court thereafter quoted with approval statements in *Mink* v. *State,* 60 Wis. 583, 19 N. W. 445, and 3 R.C.L. 732, upholding the rule in the situation here presented. It will also be noted that the provision in the nonsupport statute making the husband and wife "competent and compellable witnesses to testify . . . to any and all relevant matters, including . . . the parentage of such child or children" was held to be inapplicable where the proceeding is against a third party to obtain support for an illegitimate child. The only cases in this state which we have been able to discover wherein a married woman instituted a proceeding under the bastardy statute are *Bowen* v. *Parsons,* 78 W. Va. 791, 90 S. E. 336, and *Gabbart* v. *Mullins,* 122 W. Va. 282, 8 S. E. 2d 886, and reference to the records therein does not disclose that any questions were put

to the complainants which would elicit an answer in violation of the Mansfield rule.

Code, 48-7-1, as we have seen, provides in the first sentence, "Any unmarried woman may go before a justice of the county in which she resides and accuse any person of being the father of a bastard child of which she has been delivered." The last sentence provides that a married woman, meeting the specified requirements, may "accuse any person, other than her husband, of being the father of such child, in like manner, and the same proceedings shall thereupon be had, as if she were an unmarried woman." The proceedings as to an unmarried woman are contained in the central portion of the section providing that the justice shall examine her under oath, reduce such examination to writing, issue a warrant if the child be under three years of age, and upon return of the warrant, require a recognizance for the accused's appearance at the next term of the circuit court. Sections 2 and 3 provide, respectively, for a continuance of the recognizance in force until final judgment, and that the proceedings might, if ordered, be had in the name of the county court. Section 4 then provides that if the accused appear and plead not guilty, the issue shall be tried by a jury and if he be found guilty the court is to order him to pay such sums as are deemed proper for the maintenance of such child. The remaining sections of the statute are not here pertinent. There is no indication in any section of the statute that any rule of evidence is to be abrogated. Chastity is not an issue in the proceeding, *Pope* v. *Kincaid*, 99 W. Va. 667, 129 S. E. 752, and both a married and unmarried woman may be examined as to their acts of sexual intercourse with the defendant, or with others, if such acts occurred so near the commencement of gestation that another person might be the father, *Swisher* v. *Malone*, 31 W. Va. 442, 7 S. E. 439, the sole limitations placed upon a married woman by the Mansfield rule being to inhibit her from denying the access of her husband. The fact of nonaccess in such case may be shown by other evidence, including, but not limited to, the exhibition of the child to the jury, *Pope* v. *Kincaid*, 99 W. Va. 677, 129 S. E. 752.

Thus, in the absence of any language in Code, 48-7, either expressly or by clear implication, providing that a married woman who institutes a bastardy proceeding, and her husband, may testify as to the fact of nonaccess, we are of the opinion that they should not be permitted to do so, and the admission of such testimony on the part of the complainant and her husband in the instant case constituted error highly prejudicial to the defendant.

The judgment of the Circuit Court of Boone County is therefore reversed and the case remanded for further proceedings consistent with the views expressed herein.

*Reversed and remanded.*

CALHOUN, JUDGE, dissenting:

Very respectfully I dissent from that portion of the opinion which is summarized in the third point of the syllabus and which holds that the husband and the wife are disqualified in this case to testify that they did not cohabit with each other during a period of one year or more preceding the birth of the child.

This is a case of first impression. This Court has never heretofore, to my knowledge, held that such disqualification obtains in a bastardy proceeding prosecuted by a married woman in full conformity with the provisions of Code, 1931, 48-7-1, which provides for such prosecution. *State* v. *Reed,* 107 W. Va. 563, 149 S. E. 669, from which the third point of the syllabus in the instant case was taken, was reversed because the mother admitted that she and her husband had not been living separate and apart for a year or longer prior to the date of the birth of the child. She testified that she and her husband had not engaged in sexual intercourse for about four years prior to the trial. As I understand the opinion, it implies that she would have been a competent witness on the issue of nonaccess if she and her husband had lived separate and apart for one year or longer prior to the date of the birth of the child. The Court referred to the statute permitting a married woman to prosecute a bastardy proceeding as a "modification" of the common law; and stated that the common law rule of disqualification must be applied "save as modified by" the statute.

I believe that the common law disqualification has, by statute, been made inapplicable to a case such as this; and that, in any event, the effect of the statute is to take away the reason for the rule when applied to a case such as this.

Two separate legal principles have a certain pertinency in this case. One is the presumption of legitimacy which obtains whether the husband and wife are permitted to testify or not. This presumption was once practically conclusive. It is now regarded as rebuttable. Wigmore on Evidence, Vol. IX, Section 2527, page 448; The Law of Evidence in Virginia and West Virginia, Section 240, page 418; Jones on Evidence (5th Ed.), Vol. 1, Section 101, page 176; 10 C.J.S., Bastards, Section 3b, page 18; 7 Am. Jur., Bastards, Section 14, page 636. While the presumption is rebuttable, "the non-access of her husband whether from separation or impotency must be clearly and satisfactorily proved." *State v. Reed,* 107 W. Va. 563, pt. 4 syl., 149 S. E. 669.

The rule of disqualification has been stated by this Court in a restricted way which would not disqualify the husband or wife in the circumstances of this case. That rule, I believe, has been carefully stated by this Court in such a way as to be in harmony with the qualification of both husband and wife to testify to nonaccess in a case such as this prosecuted under the statute which gives to a married woman the right, in the restricted circumstances therein defned, to accuse one other than her husband of being the father of a child born to her during wedlock. "On grounds of public policy, neither husband nor wife, *living together as such when a child is conceived,* is competent to testify that a child born to them within the period of gestation following such conception is illegitimate." (Italics supplied). *Ohlinger* v. *Roush,* 119 W. Va. 272, pt. 1 syl., 193 S. E. 328. See also *Gardner* v. *Gardner,* 144 W. Va. 630, 636, 110 S. E. 2d 495, 499.

We are concerned here with the wisdom and necessity of perpetuating and applying in the circumstances of this case a rule which had its genesis in an *obiter dictum* utterance in an ejectment case almost two centuries ago, a rule which, according to eminent authority, is devoid of logic and had

no precedent for its justification. For many years the distinct trend has been to remove disqualification of witnesses in the interest of the unhampered ascertainment of truth. The rule disqualifies the husband and wife to testify merely as to nonaccess. The wife, for instance, may testify concerning her acts of intercourse had with one other than her husband, even though the necessary effect is to prove illegitimacy. Jones on Evidence (5th Ed.), Vol. 3, Section 799, pages 1497-99; *Ohlinger* v. *Roush,* 119 W. Va. 272, 193 S. E. 328.

Wigmore on Evidence (3rd Ed.), Volume VII, Section 2064, pages 368-71, contains the following analysis and criticism of the rule:

"(1) There is an *indecency,* we are told. And yet, in nine cases out of ten, the sole question that the wife is asked is (for example) whether her husband was in St. Louis from 1929 to 1933 during the time that she was in New York. Is this indecent? Moreover, the very next question may be whether during that time she lived with the alleged adulterer; and this (by general concession) is indubitably allowable. In every sort of action whatever, a wife may testify to adultery or a single woman to illicit intercourse; yet the one fact singled out as 'indecent' is the fact of non-access on the part of a husband. Such an inconsistency is obviously untenable.

"(2) There is an *immorality* and a scandal, we are told, in allowing married parents to bastardize their children. And yet they may lawfully commit this same immorality by any sort of testimony whatever, except to the fact of non-access. They may testify that there was no marriage-ceremony, or that the child was born before marriage, or that the one party was already married to a third person, or their hearsay declarations (after death) to illegitimacy in general may be used. In all these other ways they may lawfully do the mean act of helping to bastardize their own children. Where is the consistency here? Of what value is this conjuring phrase about 'bastardizing the issue,' if it will not do the trick more than once in a dozen times? Moreover, what shall be said of a system

of law which, while thus rebuking parents who come to prove their children bastards, at the same time by its own inhuman prohibition (unique among civilized peoples) had refused absolutely to allow those parents, by any means whatever, to remove afterwards (by legitimation) the consequences of their original error and to give to their innocent children the sanction of lawful birth,—a refusal which is still maintained in some of our jurisdictions? That the same law which harshly fixes the stain of bastardy as perpetually indelible should censure parents for the abomination of testifying to that bastardy is preposterous.

"The truth is that these high-sounding 'decencies' and 'moralities' are mere pharisaical afterthoughts, invented to explain a rule otherwise incomprehensible, and lacking support in the established facts and policies of our law. There never was any true precedent for the rule; and there is just as little reason of policy to maintain it."

Whatever basis there may be for the common law rule, that basis is fully preserved by our statute which provides, in effect, that a woman may not bastardize her child unless she and her husband shall have lived separate and apart for a year or more before the child is born. Subject to that qualification, the statute in clear language gives the married woman a right and the same remedy as if she were unmarried.

Code, 48-7-1, provides that a wife, in the limited circumstances defined therein, may "accuse any person, other than her husband, of being the father of such child, *in like manner, and the same proceedings shall thereupon be had, as if she were an unmarried woman."* (Italics supplied). We should bear in mind that the statute creates a new right and provides a remedy where none existed before in favor of a married woman. How can we justify a holding which reads into the statute a limitation on or qualification of the right and remedy thus created which is not expressed in the statute itself? Is it reasonable to assume that the legislature intended to give a right with a remedy so harshly curtailed as to amount almost to a denial thereof? As a part of her

case, the married woman must prove absence of sexual relations with her husband during the year preceding the birth of the child. Must we conclude that the legislature in creating the right intended to forbid the testimony of the only two people on earth who are likely to have any knowledge in relation to that essential element of the remedy? Could we expect the legislative intent to be plainer than that expressed in the words, "and the same proceedings shall thereupon be had, as if she were an unmarried woman"?

Not only do I believe that the majority opinion has disregarded the plain language of the statute and read into it a restriction which the legislature easily could have but did not express, but I believe also that because of the statute, the reason for the common law rule of disqualification is absent. Under both the bastardy statute (Code, 48-7-1) and the nonsupport statute (Code, 48-8-2), a wife may go before a justice of the peace and, by a writing under oath, charge that a man other than her husband is the father of her child. That writing under oath, as I understand, becomes a public record. If she can state these things in a court in a writing under oath, what reason or policy could forbid that a similar statement under oath be made orally in another court? Her written statement under oath will be present in that court, likely before the jury; but, though she be present, the majority opinion holds that she cannot make a similar statement before the court and the jury in the form of oral testimony.

I believe the reason or basis for the rule loses its force when applied to a husband and wife who have lived separate and apart for a year or longer prior to the date of the birth of the child, and after the wife has made a statement under oath in writing in which she charges all the essentials of her case, including nonaccess. "Under the common law, when the reason for a rule ceases, the rule itself ceases." *Currence v. Ralphsnyder*, 108 W. Va. 194, pt. 4 syl., 151 S. E. 700. See also *Cook v. Citizens' Insurance Co.*, 105 W. Va. 375, 379, 143 S. E. 113, 115.

For reasons stated, I would affirm the judgment of the Circuit Court of Boone County.