Roscoe **DUSTIN**, Petitioner,

v.

**Ira M. COINER, Warden of the West Virginia State Penitentiary,**
**Respondent.**

**Civ. A. No. C–72–68–E.**

United States District Court,
N. D. West Virginia.

Nov. 19, 1973.

Richard E. Hardison, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

The Petitioner in the above-styled civil action is presently incarcerated in the West Virginia State Penitentiary at Moundsville, West Virginia, serving an indeterminate sentence of five to ten years for the crime of incest. The Petitioner was sentenced by the Intermediate Court of Kanawha County, on October 29, 1970, following his conviction by a jury.

The Petitioner now seeks federal habeas corpus relief, pursuant to 28 U.S.C. § 2241 et seq. The exhaustion of state remedies has apparently been accomplished by way of an original petition for habeas corpus relief in the West Virginia Supreme Court of Appeals.

In the petition, four grounds are advanced, each alleged to be a violation of equal protection and due process: (1) the trial court permitted testimony as to the existence of a common law marriage between the Petitioner and his wife before the existence of a ceremonial marriage between them; (2) the trial court failed to grant the Petitioner's motion for mistrial after the prosecutor commented on the Petitioner's failure to testify; (3) the trial court refused a blood grouping test to establish the paternity of the Petitioner's wife's daughter, the prosecutrix in the state criminal action; and (4) the trial court "assumed insanity *after* petitioner had been forced to stand trial and [had been] found guilty."

The Petitioner was indicted, in the April term of 1970, on a charge of incest, the crime allegedly having taken place with the Petitioner's minor daughter. Following a plea of not guilty, the Petitioner was tried in July, 1970. The evidence, much of it from the testimony of the Petitioner's wife, who appeared for the state, showed that the prosecutrix was born in December, 1954, that the Petitioner's wife secured a divorce from her former husband in August, 1954, and that the Petitioner was formally married to his wife in February, 1955. The wife's testimony, further,

was that she married her first husband in 1947 and separated from him in January, 1949. The Petitioner's defense at the trial was, basically, that the prosecutrix was not in fact his true blood daughter, having obviously been conceived while his wife was still married to her former husband; the Petitioner vigorously resisted efforts by the prosecution to elicit testimony from the wife which tended to show that the father of the prosecutrix was the Petitioner rather than the wife's first husband. The trial court, however, permitted the wife to testify that she lived with the Petitioner, as man and wife, from 1949, following her separation from her first husband, until 1955, when she and the Petitioner were formally married. Other testimony, from third parties as well as from the wife, was also admitted, tending to show the existence of a relationship akin to that of a common law marriage between the Petitioner and his wife prior to their ceremonial marriage.

The first contention of the Petitioner is two-pronged; he contends that the admission of evidence tending to show that a common law marriage relationship existed between the Petitioner and his wife was prejudicial and he also contends, in his rebuttal to the Respondent's answer, that the wife was incompetent to testify as to any facts which would tend to bastardize her daughter by showing that the Petitioner, rather than the wife's legal spouse at the time, was the father of the daughter-prosecutrix.

Generally, the admissibility of evidence is a matter of state law and procedure, and does not involve federal constitutional issues cognizable in a habeas corpus proceeding. "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented," Grundler v. State of North Carolina, 283 F.2d 798, 802 (4th

Cir. 1960). 28 U.S.C. § 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States* (emphasis added)." See Delph v. Slayton, 343 F.Supp. 449 (W.D.Va.1972). Neither of the evidentiary matters attacked by the Petitioner in his first contention is sufficient to raise a constitutional issue.

Whether or not a common law marriage could have been a legal possibility upon the facts of this case is a matter of state law, and evidence showing that the Petitioner and his wife lived as husband and wife prior to their ceremonial marriage is not necessarily inadmissible here. Although the prosecution's questioning of the Petitioner's wife and of other witnesses focused on the elements of a common law marriage, the term "common law marriage" was used just twice in the questioning of witnesses, both times objected to by the Petitioner's counsel, one of which objections was sustained by the trial court. Although the testimony may have brought out the elements of a common law marriage, the testimony was also necessary for another purpose—to rebut the presumption that the wife's first husband was the father of the prosecutrix. The jury was not called upon to consider whether the facts of the case amounted to the existence of a common law marriage. If the prosecution's use of the term "common law marriage" was error in that it led the jury to believe that such a relationship existed when it possibly could not have legally existed, such error, when looked at in relation to the whole of the Petitioner's trial, must be considered "harmless," Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[1]

---

1. It should be noted, at this juncture, that the two following instructions, Defendant's Instruction No. 14 and Defendant's Instruction No. 15, were given by the trial court:

*Defendant's Instruction No. 14*
"The Court instructs the jury that under the law of the State of West Virginia, a child born during the period of marriage

■ The Petitioner's contention that his wife was incompetent to testify as to any facts which would tend to bastardize her daughter is based upon the so-called "Lord Mansfield's rule," recognized and applied in Goodright v. Moss, 2 Cowp. 591, 98 Eng.Reprints 1257 (1777). The rule was stated by Lord Mansfield in that case in the following manner:

". . . [T]he law of England is clear that the declarations [or testimony on the stand] of a father or mother cannot be admitted to bastardize the issue born after marriage. . . . As to the time of the birth, the father and mother are the most proper witnesses to prove it. But it is a rule founded in decency, morality, and policy, that they shall not be permitted to say after marriage that they have had no connection, and therefore that the offspring is spurious; more especially the mother, who is the offending party."

The Mansfield rule has long been part of the law of West Virginia. In State v. Reed, 107 W.Va. 563, 149 S.E. 669 (1929), an action against a man for nonsupport of an illegitimate child, the Court stated in the third syllabus point: "On the question of the legitimacy of a child born to a married woman, in the absence of a statute authorizing her to testify to the nonaccess of her husband, she is incompetent to testify to that fact." In Ohlinger v. Roush, 119 W.Va. 272, 193 S.E. 328 (1937), an action for criminal conversion, the Court held it to be "the policy of the law to prevent any testimony of the husband or the wife tending directly to bastardize the issue of a marriage between them, whether by showing nonaccess or otherwise." In State v. Lavender, 147 W.Va. 803, 131 S.E.2d 752 (1963), a bastardy conviction was reversed on the basis of the Mansfield rule, the Court stating that the testimony of both a married woman and her husband as to nonaccess was improper and that "the admission of such testimony . . . constituted error highly prejudicial to the defendant." See also Gardner v. Gardner, 144 W.Va. 630, 110 S.E.2d 495 (1959).

Although the Mansfield rule has seen broad application in West Virginia, it has also been roundly criticized. Judge Calhoun, in his dissenting opinion in *Lavender, supra,* states that the rule "had its genesis in an *obiter dictum* utterance in an ejectment case almost two centuries ago, a rule which, according to eminent authority, is devoid of logic and had no precedent for its justification," 147 W.Va. at 815–816, 131 S.E.2d at 760. See also 7 Wigmore on Evidence §§ 2063, 2064 (3rd ed.).

Although the Mansfield rule has been applied in a variety of circumstances in West Virginia, the factual situation presented in the instant petition is unique. No state precedent exists which would indicate whether or not application of the rule would be appropriate in

---

of a man and woman is presumed to be the child of the parties thereto and the burden is upon the State to prove that such child is not the product of the union between the married parents by showing that the husband has no access to his wife for purposes of sexual intercourse and conception of the child in question, which presumption is rebuttable by the State by clear and convincing evidence to the contrary."

"Therefore, if you shall believe from the evidence that the State has failed to meet the burden of proof in this regard then you shall return a verdict of not guilty."
*Defendant's Instruction No. 15*

"The Court instructs the jury that one of the basic elements of the crime of incest is that the prosecutrix, Donna Dus-

tin, must be the daughter of the defendant."

"Two of the strongest presumptions in the law are:

(1) That a child conceived during a marriage is the legitimate child of the parties to that marriage; and

(2) When a man and a woman, Elmer and Nina Toney, were in the state of marriage, although separated, the husband, Elmer Toney, had access to his wife for sexual intercourse."

"The burden is upon the State to refute these two strong presumptions by competent evidence, and, if you do not believe that the State has produced competent evidence to refute these presumptions you must return a verdict acquitting the defendant."

a criminal proceeding of this nature. Whether or not the State of West Virginia, as a matter of first impression, chooses to apply the rule in an incest prosecution is of no concern to a federal court in a habeas corpus action. The use of the Mansfield rule is neither required by nor prohibited by the United States Constitution; if the state, therefore, decides not to apply the rule in circumstances of this nature, no "violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a) has taken place and habeas corpus relief is not proper. As stated in Storti v. Massachusetts, 183 U.S. 138, 142, 22 S. Ct. 72, 73, 46 L.Ed. 120 (1901) "whether it . . . [is] lawful or not is a matter dependent upon the laws of the State, and to be determined by its courts." The circumstances alleged by the Petitioner in his first contention and illuminated by the trial transcript which is part of the record in this case do not impugn fundamental fairness or infringe specific constitutional protections, Grundler v. State of North Carolina, *supra*.

◼ The second contention of the Petitioner is that "the trial court failed to grant motion for mistrial upon the state's comment to the jury on petitioner's failure to testify." The trial transcript reveals that the state prosecutor, during his final argument to the jury, referred three times to the "uncontroverted" or "uncontradicted" nature of the evidence.[2] While comments as to a defendant's failure to take the stand can be prejudicial, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the comments in the case at bar

constitutes "harmless error," Chapman v. California, *supra*. Although "comment on a defendant's failure to testify cannot be labeled harmless error in a case where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis of conviction, and where there is evidence that could have supported acquittal," Anderson v. Nelson, 390 U.S. 523, 523–524, 88 S.Ct. 1133, 1134, 20 L.Ed.2d 81 (1968), the comments at issue in this case do not require vacation of the Petitioner's conviction. The kinds of comments which amount to reversible error are those in which the language is "manifestly intended to convey or . . . of such a character that the jury would naturally and necessarily take it to be a comment on . . . [the defendant's] failure to testify," United States v. Wells, 431 F.2d 434, 435 (6th Cir. 1970); this test has not been met in the case of the Petitioner herein.

◼ As his third ground for relief, the Petitioner alleges that "the trial court refused a blood grouping test to truly establish paternity" of the prosecutrix. He states: "The trial court failed to testablish that Petitioner was the true father. The trial court allowed this to be determined solely by the jury. The court should have determined paternity before allowing the matter to go to trial." The Petitioner makes no contention that he ever requested, by motion or otherwise, a blood grouping test and there is nothing in the record which would suggest such a request. This third allegation, in its interpretation of the law, is clearly unmeritorious and

---

2. In his closing argument, the prosecutor made the following statements:

"The evidence in this case is that Mrs. Dustin was previously married to Mr. Toney; the uncontroverted evidence in this case, the uncontroverted evidence is that evidence of Mrs. Dustin that she and Mr. Toney separated in 1949, went their separate ways."

\* \* \* \* \*

"The evidence in this case, uncontroverted, is that Donna Dustin is the daughter of Roscoe Dustin."

\* \* \* \* \*

"The evidence is that there was [sic] children born, as we mentioned a moment ago, of this union. The evidence is that these are the children of Roscoe Dustin, who she was living with, during this period of time, and in particular, that Donna Kay Dustin is the child of Roscoe Dustin, which is what we are concerned with here today. And that is the uncontroverted, uncontradicted evidence in this case, ladies and gentlemen of the jury."

need not be considered further by the Court.

■ The Petitioner's final allegation is that the "trial court assumed insanity *after* petitioner had been forced to stand trial and [had been] found guilty." He contends that "[i]t is contradictory to try one accused of crime, then afterwards determine the fact that 'he may be mentally ill'. If this were the case, he should not have been forced to trial in the beginning." The Petitioner's complaint here arises from his commitment, after conviction, for a pre-sentence examination pursuant to § 27–6A–1 of the West Virginia Code (Michie 1971).[3] The trial judge did not "assume" the insanity of the Petitioner, but merely complied with the state statute. Prior to the Petitioner's trial, he was found competent to stand trial. This final allegation, therefore, is without merit and must fall.

For the reasons stated above, none of the Petitioner's claims are sufficient to warrant federal habeas corpus relief.

3. The statute reads as follows:
"If a person is convicted under chapter sixty-one, article eight, section twelve . . . of the Code of West Virginia, . . . the court shall commit him to the state commissioner of public institutions for pre-sentence social, physical and mental examinations. The court and all public officials shall make available to the commissioner of public institutions, upon his request, all pertinent data in their possession in respect to the case."